Morphy, J.
delivered the opinion of the court.
The question presented for our decision in this case arises out of a clause in the last will and testament of the late Alexander Milne; it is in the' following words, to wit:
“ It is my positive .will and intention that an asylum for destitute orphan boys, and another asylum for the relief of destitute orphan ,girls, shall be established at Milneburg, in this parish, under the names of the Milne Asylum for destitute orphan hoys, and Milne Asylum for destitute orphan girls, and that my executors shall cause the same to be duly incorporated by the proper authorities of this State; and to the said two contemplated institutions and to the present institution of the Society for the relief of destitute orphan boys in the city of Lafayette and parish of Jefferson, in this State; and to the Poydras female asylum in this city, I give and bequeathe in equal shares or interests, of one fourth to each, in all my lands on the Bayou St. John, and on the Lake Pontchartrain; including the unsold lands of Milneburg.”
[53] I institute for my universal heirs and legatees in equal shares or portions the said four institutions, that is to say, the two intended institutions at Milneburg, and the two asylums aforesaid in this city, and in the city of Lafayette, to whom I give and bequeathe the residue of all the property and estate, movable and immovable, I may possess at the time of my decease, to be equally divided and apportioned among them.”
The testator died in October, 1838, and in February following the general assembly of this State wishing to enable the executors to carry into full effect his beneficent intentions, incorporated the two asylums mentioned in the will. When the executors filed their account, the absent heirs of the deceased, through the attorney appointed to represent them, opposed all such disbursements as had been made for establishing or maintaining the two institutions at Milneburg, on the ground that said disbursements were made by the executors without authority, and in their own wrong. They averred that the two incorporated asylums had acquired no right, title or interest, in or to the said succession, or any part of it; that at the death of the late A. Milne they were not in esse, and had no capacity to take under his will; that at the opening of the succession, the heirs at law and next of kin of the deceased, acquired a vested right to all such parts or portions of said estate as had lapsed or fallen, for want of capacity to take in any or all of the particular legatees, or legatees under a universal title, or from any other cause; and that the executors had full notice of the incapacity of these institutions to take, because an application previously made by them to he recognized as universal legatees, and put in possession of their respective positions, had been opposed on the same grounds. The court below dismissed the opposition so far as it contested the capacity of the Milne asylums to receive their bequests. The heirs at law appealed.
They rest their objections to the validity of these bequests, on all those ar[54] ticles of the Louisiana Code whichdeclare a legacy to be void if the legatee *37 be not in existence, or be incapable of receiving it, at the opening of a succession. La. Code, arts. 944, 947, 948, 949, 1459, 1469, 1478, 1598, 1690, 1696. They contend that as these two institutions had no legal existence at the time of the death of the testator, they could not take under his will; that the nearest legitimate heirs became immediately entitled by law to these legacies, and that their title to the same being thus vested, could not be destroyed by the subsequent acts of incorporation obtained from the general assembly. This question does not. present itself to us surrounded by those difficulties which would attend its solution in those States whose statutes of wills exclude corporations as competent devisees. The statutes of mortmain and the reasons which produced them do not exist among us; and corporations are placed by our laws on the same footing as natural persons, as to their capacity to take by devise.
Two things must concur to enable a legatee to take under our laws; 1st. He must be in existence at the time of the opening of the estate; 2d. He must have capacity to receive at that time, if the legacy be absolute; if it be conditional, it is sufficient if the capacity to receive exists at the time of the fulfilment of the condition. La. Code, art. 1460; 5 Toullier, p. 99, No. 91. Pothier des Donations Testamontaires, p. 361, and Traite des Oblig. Nos. 203, 208 and 222.
It is in general true that the person of a legatee must be designated in terms not to be mistaken; if the designation is so vague and indefinite that the intention of the testator cannot be ascertained, the legacy falls for want of sufficient certainty. But this precision is required only as to individuals in regal'd to whom the will cannot be executed if their identity cannot be established ; when a legacy is made to a certain class or collection of persons, and is not dictated by caprice, but by charitable and meritorious motives, although the individuals are unknown to the testator, such a legacy will not under our laws bo considered void for uncertainty. Pothier des Testa- [55] ments, chap. 1, art. 5; Domat, Lois Civiles, book 4, chap. 11, sect. 6, sects. 4 and 5. Our Code, art. 1536, provides that “ donations made for the benefit of an hospital, thepoor of a community or of establishments of public utility, shall be accepted by the administrators of such community or establishments.” In the Hapoleon Code which contains provisions similar to ours, as to the necessity of a legatee being in existence at the death of the testator, we find an euactinent recognizing the validity of such donations, but providing that they shall not be carried into effect unless approved of by the government. N. C. art. 910. Such donations are there made conditional; the capacity to receive is made to depend on the fulfilment of a condition, to wit, the sanction of the sovereign; until that is obtained, the poor or other class of persons intended to be benefited are without capacity to receive. Had the deceased made a legacy to the destitute orphans of this parish, without providing that they should be incorporated, the question would have presented itself whether under article 1536, above quoted, the police jury of the parish would not have been competent to accept it on behalf of the intended objects of his benevolence. There appearing to be some doubt on this subject, we have seen, on former occasions of this kind, the general assembly of the State act *38 ing as the purrem patrice in the carrying into effect charitable dispositions in the wills of public benefactors. 2 Moreau’s Dig. p. 208; Laws of 1837, p. 24. They authorized the acceptance by the police juries of Points Ooupée and West Baton Rouge, of three legacies, by the late Julien Poydras, two of $30,000 to each parish, to be appropriated as dowries to the young ladies of the parishes to encourage their marriages, and one of $20,000 to be appropriated to the maintenance of an academy in the parish of Pointe Ooupée. In the will of Poydras the legacies were absolute, and the difficulty laid in the absence of any capacity in the legatees to take. at the moment of the [86] opening of the succession. In the case under consideration, the testator appears to have been aware that unless incorporated the two asylums had no capacity to .receive, and to have intended that his dispositions in their behalf' should not be carried into effect until after their incorporation. This intention is not expressed in positive terms, but can and must, we think, be fairly inferred from the wording of the will. The Roman law informs us that one who is incapable may be instituted as heir, for the time when his incapacity shall cease. “ In tempus capiendse hereditatis instituí heredem posse benevolentias est.” Veluti, Lucius Titius, cum capero potuerit, heres esto; Id. et in legato, book 28, tit. 5, law 62, de Insti. Hered; 5 Toullier, p. 99, No. 91. Dispositions of this kind are conditional in their nature, and the condition is fulfilled by the creation of the capacities to receive: thus in this case, it was intended, we think, that the legacies should be delivered to these institutions upon their becoming incorporated; the implied condition was that they should be rendered capable of receiving, and that condition was fulfilled by the subsequent acts of incorporation. Somewhat analogous are the cases of a legacy to a feme sole upon her marriage, or to an infant in ventre sa mere, the marriage or the birth which fulfils the condition creates the capacity to receive which did not exist at the time of the opening of the succession.
But to take a less limited view of this matter, must not every disposition in a man’s will not reprobated by law, be carried into effect ? such is the rale universally laid down for the construction of wills. Here a testator who has acquired his wealth in this country and has no forced heirs wishes to create with the aid of the legislature two institutions of manifest public utility; as soon as this desire of the deceased is made known to the general assembly, they grant the necessary acts of incorporation and the executors discharge the trust committed to them. We can see nothing in the law to prevent this be-[57] ing done. After the strong and positive declaration of Milne with respect to the disposition of his property, shall a technical objection drawn from provisions of law, not perhaps applicable to cases of this kind, defeat his purpose? nothing short of an express prohibition in the law should, we think, have such an effect. It is supposed that the direction of the deceased to his executors to establish these asylums and hand over to them a part of his estate is a violation of article 1507 of our Code, which declares that substitutions and fidei eommissa, are abolished. In the language of this court in Mathurin v. Livaudais, 5 Martin, N. S. 302; “ the object of this change in our jurisprudence was to prevent property from being tied up for a length of time *39 in the hands of individuals, and placed out of the reach 'of commerce. The framers of our Oode certainly never contemplated to abolish naked trusts, uncoupled with an interest which were to be executed immediately. If they had, they would not have specially provided in a subsequent part of the work for testamentary executors, described their duties and recognized the validity of their acts.” Here in the discharge of their trust the executors were to apply to the legislature to have the asylums incorporated, and as soon as this was done, they were forthwith to deliver, and did deliver over to them the bequest made in their behalf. In this we can see no substitution or fidei commissum ; it is nothing more than a conditional disposition. The case of the Baptist Association v. Hart's executors, 4 Wheaton, p. 27, has been pressed upon us as having a strong bearing upon the present. There the bequest was “ To the Baptist Association that for ordinary meets at Philadelphia." It was an absolute devise to take effect on the death of the testator. The association described not being incorporated was incapable of executing the trust. The individuals composing it could not take the bequest because no private advantage was intended for them, and the will of the. deceased did not contemplate the event of the association becoming a body corporate. The court considered that the bequest was gone for uncertainty as to the devisees; [58] no one having capacity to take at the death of the testator. More analogous to the present case is that reported in 3 Peters, 112 ; the object of the devise was to build an asylum to be called “ The Sailor’s Snug Harbor," for the purpose of maintaining and supporting aged, decrepid and worn out sailors. It was held that a devise to a corporation to be created by the legislature, composed of several officers, designated in the will as trustees, was valid, and this decision was made after considerable research and deliberation, growing out of a division of opinion in the court. Judge Story, who delivered in the case a dissenting opinion, rests it on grounds, not incompatible with the views we have expressed. He says, page 147,'“ But the difficulty is in arriving at the conclusion upon the terms of the will, that the testator did mean any devise to them (the officers) in their private capacities. It is manifest from his language that he did not devise to the then chancellor, mayor and recorder, &c., in their private capacities, because the language is that it is to the chancellor, &c. &c.,for the time being, and their respective successors in the said offices for ever. It is then a devise to them as officers, during their continuance in office, and the estate is to go to their successors in office for ever; so that none of the devisees are to take any certain estate to themselves, but only while they continue in office.” “ His intention is clearly that the charity shall be a perpetuity. He devises to the successors in office for ever. They are to be the administrators of the charity for ever. Upon what ground can the court exclude the successors from .the administration of the charity, when the administrator has so designated them ? Why may we not equally well exclude the present incumbents as the future ? Both are named in the will; both are equally, in the view of the testator, of equal regard.” In another place, page 149, he says, “ If the devise was void at law at the time it was to have effect, to wit, at the death of the testator, the subsequent act of the legislature of New-York, could not have any effect to divest the vested [59] *40 legal title of the heirs of the testator. Tire devise was not a devise to a corporation not in me and to be oreated in future. It was a devise in presentó to persons who should be officers at the death of the testator, and to their successors in office. The vesting of the devise was not to be postponed to a future time, until a corporation could be created. It was to take immediate effect, and if the trustees could not exercise their powers in the manner prescribed by the testator, they were to apply to the legislature for an act of incorporation. Assuming, then, that a devise per verla de futuro, to a corporation not in esse, which is to take effect when the corporation should be oreated would be good, and vest, by way of executory devise, in the corporation when created, as seems to have been Lord Chief Justioe Wilmot’s opinion; it is a sufficient answer that such is not the present case.” Thus it is seen that the dissent of this learned judge proeeedod on the ground that the will of the testator was not complied with by oonfiding the management of the trust to the corporation created by the legislature of ÍTew-York, to the exclusion of the successors in office of the officors designated in the will; but no opinion is expressed against the validity of a devise to a body corporate to be created subsequently to the death of a testator. But without adverting to a number of decisions made in England and in our-sister States, under the doctrine of charities, which has grown up from the civil law, we must determine this controversy by the provisions of our own statutes, and in them we find nothing which makes it our duty to reverse the judgment under review.
It is therefore ordered and adjudged that the judgment of the court of probates be affirmed, with costs.