THE FIRST CONGREGATIONAL CHURCH OF THE CITY AND PARISH OF NEW ORLEANS *v.* ANN HENDERSON.

No action can be maintained on an agreement entered into with a view to contravene the general policy of the law. The illegality of a contract, arising from transactions *in fraudem legis*, may be always opposed by the party who wishes to recede from it.

Defendant's ancestor bequeathed $2000 a year, for five years to plaintiffs, to commence five years after his death. At the time of the bequest and of the testator's death, plaintiffs were prohibited by their charter, from receiving any legacy exceeding $1000 ; but this restriction was removed by an act of the legislature before the first annual payment became due. A compromise having been entered into between the ·heirs and legatees, by which it was stipulated that a certain amount should be paid to plaintiffs by the heirs, in satisfaction of their legacy, this action was commenced to recover the portion due by the defendant. *Held*, that plaintiffs can only take $1000 ; that the term fixed by the testator for the payment of the legacy, cannot be assimilated to a condition ; that in the former case the right is acquired and perfect, the exercise of it being only suspended, while in the latter, it is uncertain whether the legatee will ever be able, in consequence of the condition, to claim the legacy ; that in the first case, the right could not be acquired by a person incapable at the testator's death ; but that in the second, the capacity is only required to exist at the time of the accomplishment of the condition ; (C. C. 1459, 1460, 1691, 1692 ;) and that the want of capacity at the death of the testator could not be removed by subsequent legislation, which can only be prospective in its operation.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*Micou* and *Eustis*, for the appellants.

*Grymes*, for the defendant.

SIMON, J. The plaintiff seeks to recover of the defendant, here represented by her agents, and attorneys in fact, W. C. Milne and M. M. Thompson, the sum of $3000, which is alleged to be due under the following circumstances. It is averred that by the will of the late Stephen Henderson, who died in March, 1838, the petitioners, under the denomination of Clapp's Church, were instituted one of the particular legatees of the deceased. That said will was duly admitted to probate ; and that a short time afterwards, a suit having been instituted by Ann and John Henderson, in the Court of Probates of the city of New Orleans, on the allegations that the legacies made to the petitioners, and to certain other corporations were void in law, and with a view to claim the whole estate of the deceased, the petitioners filed their answer to said suit, in which they alleged the grounds on which the will of the deceased should be maintained, and the pretensions of the plaintiffs defeated. That, in April, 1839, John, Ann, and Stephen Henderson, jr., and other persons and corporations, legatees, and parties to said suit, to prevent further litigation, entered into a

certain act of compromise, to which the petitioners were not a party, but before signing which, certain of the corporations therein interested, agreed with John, Ann, and Stephen Henderson that, in lieu of becoming a party to said act, the petitioners' interest in the estate should be provided for, by the said John, Ann, and Stephen, each paying to the petitioners a sum of $3000, which, for other considerations, they and each of them promised to pay in annual instalments, to be due in January, 1841, 1842, and 1843 ; in pursuance and in consideration of which, the compromise was executed, without any further objection on the part of the petitioners. That John, Ann, and Stephen Henderson well knew, at the time of the compromise, that the charter of the petitioners restricted the amount which they might receive by donation or testament ; that the contract was made to settle the suits then pending, and to avoid further litigation; and that the restriction has since, by law, been removed. That Stephen Henderson complied with his agreement by delivering his three notes, one of which has been paid ; but that John and Ann Henderson have totally refused to do so.

The defendant, by her attorneys in fact, pleaded the general issue, and specially denied her being bound to pay to the petitioners the sum by them demanded, or that any such promises were made by her, or by any person having authority to bind her in the premises, as in the petition she is alleged to have made.

There was judgment below in favor of the defendant, from which the plaintiffs have appealed.

It appears from the evidence, that among the testamentary dispositions contained in the will of the deceased, he gave a legacy of $2000 per annum, for five years, to the plaintiffs, to commence five years after his death. The heirs of the deceased, who resided in Scotland, and were aliens, instituted a suit in the Probate Court, as alleged in the petition, which was resisted by the plaintiffs and the other corporations, who attacked and disputed the right of the Scotch heirs to the inheritance claimed by them. Terms of compromise were proposed ; and after divers communications and conversations between the parties, in which it appears that the pretensions of the plaintiffs were carried to the extent of $12,000, over and above the sum of $1000 assumed to be paid to

them by the other corporations, an act of transaction was finally signed by all the interested parties, except the plaintiffs, who were not made parties thereto. This transaction, or compromise, was made the basis of the judgment of the Court of Probates subsequently rendered.

The testimony of the several witnesses who were examined on the trial of this cause below, shows that the claim set up by the plaintiffs under the will, was the only matter that interfered to prevent the completion of the compromise. Their attorney insisted upon their being allowed $12,000, besides the $1000 mentioned in the act; and this became a subject of discussion between the plaintiffs' attorney, and Judge Rost, and Stephen Henderson, jr., two of the heirs. The terms insisted on by the plaintiffs' attorney were acceded to by Judge Rost, who consented to pay his fourth, ($3000) by instalments of one, two, and three years; as also by Stephen Henderson, who subsequently gave his notes in accordance with the agreement. Messrs. Rost and S. Henderson accordingly went to W. C. Milne's counting house, and stated to him what was required of his constituents. He appeared to be much occupied, but finally said that as Mr. Henderson's interest was the same as that of his constituents, *"he would do as Henderson did in the matter."* This arrangement was considered as highly important to the heirs, as it was for their interest that the compromise should be signed. This result was communicated to the plaintiffs' attorney, who thereupon consented that the transaction should be signed, and it was so signed by all the parties, except by the plaintiffs, who according to the understanding, were left out of the compromise.

William C. Milne, who was also examined as a witness, testifies that he has no recollection of the visit of Messrs. Rost and Henderson, and that he had so many interviews with them that he cannot recollect the particulars. He has no recollection of ever agreeing to pay any other specific sum, beyond the $1000. After consulting his partner and his counsel, his impression was that no such agreement had beeen made. He states also that he never communicated with Ann Henderson on the subject of the legacy claimed by Clapp's Church; but that it was considered advisable to send the act of compromise to Europe, to be ratified

by the heirs; and that such ratification was procured after the lapse of some months.

In addition to the foregoing substantial and concise statement of the evidence, it is proper to remark here, that the reason why the plaintiffs were left out of the compromise, was, (as we are induced to suppose,) owing to their incapacity to receive more than $1000, under the charter of incorporation, which (see acts of 1833, page 30,) contains the following provision : " That said corporation shall not be authorized to accept of any donation or legacy exceeding one thousand dollars from any one individual, and should a larger sum be bequeathed by any person by last will and testament, the same shall be reduced to the aforesaid sum of one thousand dollars, and the residue shall be distributed among the heirs of such testator." This incapacity was removed, however, by a law of 1841, (see acts of 1841, page 45,) amendatory of the former act, which contains this clause : " said corporation may receive by legacy, donation *inter vivos* or *mortis causa*, any lot or tract of land, for the purpose of erecting a church thereon, or any other legacy or donation, provided that the value collectively shall never exceed the sum of one hundred thousand dollars ; and that all laws or parts of laws to the contrary be, and are, hereby repealed."

From the facts disclosed by the evidence, it is obvious that the object of the agreement upon which this action is based, was to give effect *indirectly* to the legacy made to the plaintiffs by the testator. The parties well knew, that the corporation could not legally set up any claim to the liberality of the deceased, above the sum of $1000, and that the incapacity could not be cured by the compromise. At the time it was passed, such incapacity had not been removed ; and the payment of the sum of $1000, made to the plaintiffs, would have prevented any further interference on their part with the right or claims of the other heirs or legatees ; and we cannot view the agreement relied on, in any other light than as an attempt to carry the legacy into effect. Although, morally speaking, it was perhaps a very commendable and praiseworthy act on the part of the other legatees, who endeavored to give effect to the last will, and expressed intention of their benefactor, by making the sacrifice of a portion of their legacies in favor of an

institution of public utility ; still, it suffices, that one of the obligors from whom it is demanded, refuses to execute it, to make it our duty to examine whether or not, legally speaking, he can be bound to comply with his obligation, or in other words : whether the agreement sued on, taking for granted that it has been satisfac- torily established, is binding and obligatory upon the defendant ?

It behoves us therefore to inquire : 1st. Into the legality of the consideration or motive for making the contract or agreement sued on, in reference to the then existing incapacity of the plain- tiffs to receive under the will.

2d. Whether said incapacity having been removed since the death of the testator, but before the first instalment of the legacy became due this circumstance can entitle the plaintiffs to recover the whole amount of the bounty, and thereby give effect to the present action against the defendant, under the agreement.

I. The plaintiffs were clearly incapable of accepting any legacy above the sum of $1000. Any liberality above that amount was forbidden by express law ; and as we have already said, the ob- ject of the agreement was to defeat the provision of the law, as contained in the charter of incorporation. Now, the 1887th art. of the Civil Code says that, " an obligation with an unlawful cause can have no effect;" and "the cause is illicit, when it is forbidden by law," art. 1889. Merlin, (Questions de Droit, *verb.* Causes des Obligations, § 1, art. 2,) says ; " *Une cause illicite est, en fait d'obligations, considérée comme non-existante ; ainsi, toute cause qui blesse une loi prohibitive, vicie l'engagement auqvel elle a donné lieu.*" It follows, therefore, that the illegality of a contract arising from transactions *in fraudem legis*, can always be opposed by the party who wishes to recede from it ; and that an action grounded on an engagement entered into with a view to contra- vene the general policy of the laws, cannot be maintained. These well known principles, often recognized in our jurisprudence, are fully applicable to the agreement under consideration, and we concur with the judge *a quo* in the opinion, that the agreement was intended to carry the prohibited disposition into effect, and was not only without any legal cause or consideration, but had for its basis an illegal one.

II. It has been urged that the term imposed by the testator for

the payment of the legacy, is in the nature of a condition ; that under the 1460th art. of the Civil Code, " when the donation depends on the fulfilment of a condition, it is sufficient if the donee is capable of receiving, at the moment the condition is accomplished ;" and we have been referred to the case of the succession of *Alex. Milne*, 17 La. 46, as containing principles applicable to the question at issue. In this case, it is true, that the testament was opened on the 14th of March, 1832, that the incapacity was removed on the 5th of March, 1841, and that, therefore, five years had not quite elapsed between the period of the opening of the will and the removal of the incapacity. Thus, it is insisted, that the legatee was capable of receiving at the time that the first instalment was to be paid, and this is all that the law requires. But the term, in our opinion, cannot be assimilated to a condition. The payment of the legacy to be made at a certain period, was only delayed, without its depending upon any uncertain event, which was to happen or not at the expiration of the five years. But even supposing that it could be taken as a protractive, and not as a suspensive condition, it is clear, that under art. 1692 of the Civil Code, which declares that, " a condition which, in the intention of the testator, does but suspend the execution of the disposition, does not hinder the instituted heir or legatee from having a right acquired and transmissible to his heirs," such delay could not prevent the legatee from considering the sum given as his absolute property, and from transferring his title thereto, perfect at the time of the opening of the will, to any other person. The distinction made by our law, (Civil Code, arts. 1459, 1460, 1691, and 1692,) is perfectly clear. In the one case, it is unknown whether the legatee will ever be able, from the condition imposed, to claim the legacy, and his capacity is only required to exist at the time of the accomplishment of the condition. In the other, the right is acquired, and perfect, but its exercise is only suspended until the expiration of the term. It is obvious, that in the latter case, the right could not be acquired by an incapable person. Toullier, (vol. v. No. 94,) says : *Si la condition était plutôt un terme qu'une condition ; si elle était dilatoire seulement et non suspensive ; dans ce cas, qui revient au cas des legs purs et simples, c'est à l'époque de la mort du testateur qu'il faut con-*

*sidérer la capacité du légataire.*" Ib. No. 276, note 1, and 673, 674, 675, 676. Grenier, Donations, No. 142. And Dalloz, *verb.* Dispositions entre-vifs et testam. ch. 2, v. 11, § 8, who says: " *Le droit dans ce cas commence au décès du testateur ; c'est donc à cette époque que la capacité du légataire est requise.*" These principles, which appear to us incontrovertible, and are in perfect harmony with the provisions of our law, are fully applicable to the disposition which gave rise to the agreement upon which the present action is based. The plaintiffs could not take under it more than $1000, which was the utmost extent of his capacity at the time of the death of the testator ; and although the payment of the legacy was delayed for five years, by the terms of the will, and although the First Congregational Church, originally incompetent to take the whole amount of the bequest, was, by the statute of 1841 invested with ability before the happening of the period at which it was demandable, we cannot hesitate to say that in this case, the want of capacity at the death of the testator, resulting from a positive statutory prohibition then in force, cannot be supplied, cured, or removed, by any subsequent legislative enactment, which can only be prospective in its operation. The case referred to, (17 La. 46,) has, in our opinion, no application to the present one ; and, however desirous and disposed we might be to carry into effect the benevolent intention of the testator, we are constrained to come to the conclusion that the plaintiff is not legally entitled to recover.

*Judgment affirmed.*