## No. 13,036.

SUCCESSION OF FRANCOIS MEUNIER, DECEASED.    ON PETITION OF HEIRS
TO ANNUL WILL.

### SYLLABUS.

#### ON MOTION TO DISMISS APPEAL.

1.   The judgment appealed from annulled the will and the probate thereof, and
     recognized plaintiffs as heirs of the deceased.  But it did not in terms send

them into possession, nor was there any award against the executors, spe-
cifically, for a sum as representing the net proceeds of the estate in their
hands. HELD : A case where the trial judge could fix the amount of the
suspensive appeal bond.

2.  One of the executors, acting in his individual capacity, was competent as
    surety on such appeal bond for the legatee who had appealed.
3.  Objection that the appeal was taken in the name of the agent and attorney
    in fact of the legatee, instead of in the name of the legatee, held under the
    facts and pleadings of the case, not tenable.

### ON THE MERITS.

1.  Donations and bequests are permissible to trustees for educational, charitable,
    or literary purposes, or for the benefit of institutions, existing or to be
    founded, the object of which is to promote education, literature, or charity.
    Act No. 124 of 1882.
2.  But this permission is restricted to educational, charitable, and literary ob-
    jects within the State of Louisiana, and to institutions founded and to be
    founded under the laws of the State for such purposes.
3.  To avoid the dispositions of wills and testaments it must plainly appear they
    come within the prohibitions of the law.
4.  Where a bequest in a will, in one view, is illegal ; in another view, lawful,
    the latter will be adopted and the will sustained.
5.  A legacy to the Commune of Carouge, Canton of Geneva, Switzerland, which
    is directed to be placed at interest and with the interest to endow annually
    two poor girls and to give a pension to ten old persons of the two sexes, is
    held to be a legacy to pious and charitable uses, and sustainable.

APPEAL from the Civil District Court, the Parish of Orleans.—
Monroe, J.

G. V. Soniat and James McConnell for the Heirs, Appellees.

Charles Louque for the Executors and the City of Carouge, Trus-
tee, Appellants.

The opinion of the court was delivered by

BLANCHARD, J. Francois Meunier died leaving a last will and tesi-
ament, olographic in form, by which he bequeathed to the city of
Carouge, Canton of Geneva, Switzerland (his native city), all the
property in the city of New Orleans, owned by him, consisting of
several pieces of real estate, shares of stock, money and bills due him,
all of the aggregate value of about $25,000.

He directed this property to be sold and then followed a declara-
tion to the effect that the city of Carouge "shall place the said sum
at interest, and with the interest shall endow each year two poor girls

and shall give a pension to ten old persons of the two sexes without any distinction of religion".

He named Jerome Meunier, Joseph Bayle and Emile Hoehn as testamentary executors.

The will was admitted to probate, the executors were confirmed as such and letters testamentary issued to them.

Subsequently, collateral heirs of the deceased, his first cousins, residing in Switzerland and France, presented a petition for the annullment of the will.

They represented that the deceased left no ascendants nor descendants, and that they, with others mentioned, were his closest of kin and sole heirs.

The will is attacked as being against public policy and in derogation of the laws of the State of Louisiana, where the properties it deals with are situated, and where the will is to have effect.

It is averred that the city of Carouge is a foreign municipal corporation incapable of receiving and taking charge of an estate here; that the dispositions of the will in its favor are not sanctioned by the laws of Louisiana nor by the treaty ratified between the United States and the Swiss Republic; that the laws of Switzerland did not, at the date of the execution of the will, nor that of the probate thereof, authorize the city of Carouge to accept the legacy burthened with the conditions stipulated; and that no comity in this respect exists between the State of Louisiana or the United States and Switzerland.

As further ground of avoiding the will, it is charged that the bequest to the city of Carouge creates a trust or *fidei commissum* obnoxious to the law of Louisiana; that by the terms of the will the said city is not vested with full ownership of the property or funds bequeathed, but, on the contrary, is required to invest the funds and to hold the same in trust perpetually for the purpose of endowing each year "two poor girls" and pensioning "ten old persons" whose existence is uncertain and whose names, residences and nationality are not given; and that this is an attempt to will by testament through the intervention of a commissary or attorney in fact and constitutes a prohibited substitution.

The petitioners represent that, with the will declared void, the inheritance of the property of the deceased devolves upon them under the laws of Louisiana and the treaties in force between Switzerland and the United States.

The judgment of the court *a qua* sustained the opposition to the will, decreed its nullity and recognized the claimants as heirs at law of the deceased.

An order for a suspensive appeal from this decree was taken by the executors and the representatives of the city of Carouge.

### MOTION TO DISMISS APPEAL.

A motion is made here to dismiss the appeal on several grounds, one of which is that the record is incomplete. It suffices to say we do not find it so.

Another ground is that the trial court was without authority to fix the amount of the suspensive appeal bond, and that no appeal suspending the execution of the judgment could be taken without the giving of a bond exceeding by one-half the sum of $15,387.50, which was the net amount of the estate left in the hands of the executors after the payment of the debts of the deceased and the expenses of administration. The bond given was for less than the sum mentioned, but was for the amount fixed by the court.

The judgment appealed from annulled the will and the probate thereof. It further recognized the petitioners as heirs of the deceased and as such entitled to the dead man's estate.

But it did not, in terms, send them into possession; there was no order directing the recognized heirs to be put into possession. Neither did the judgment mention the amount of the net proceeds of the estate then in the hands of the executors. There was no judgment against the executors specifically for a sum as representing such proceeds.

Under these circumstances it was a case where the District Judge was empowered to grant a suspensive appeal and fix the amount of the bond to be given as such.

Succession of Edwards, 34 La. Ann. 216; Coyle vs. Succession of Creevy, 34 La. Ann., 539; 30 La. Ann. 285; 29 La. Ann. 327.

A further objection is that the only party who signed the bond as surety is Edward Hoehn, who in his capacity of co-executor is appellant herein.

The contention is that Hoehn individually cannot be surety for Hoehn, executor, appellant.

Neither can he. State vs. Judge, Etc., 2 R. 449; Lafon vs. Lafon, 2 N. S. 571.

It may be, too, though on this we express no opinion, that Hoehn in his individual capacity is not competent as surety for his co-executor, Jerome Meunier, on an appeal bond given by the two executors. It is not necessary to decide this question, for Hoehn, individually, was clearly competent as surety on the appeal bond for the other appellant, the city of Carouge.

Even, therefore, were the appeal held not good as to the executors, it must be maintained as to the real party in interest—the legatee under the will—and this, necessarily, would bring the case before us on its merits.

But it is contended the city of Carouge has not appealed. This contention is based on the fact that the motion and bond of appeal recite that "Louis Rittener, the duly qualified agent of the Commune of Carouge," appeals. It is urged that this is not an appeal by the city of Carouge.

We find that citation in this proceeding to annul the will was prayed for against "the City of Carouge, Switzerland, through her accredited agent, Louis Rittener"; that the answer of the city of Carouge to the demand reads:—"Into court comes Louis Rittener, the duly qualified agent and attorney in fact of the Commune of Carouge," etc.; and that the judgment upon the issues made up by this answer is against "the City of Carouge, Switzerland, herein represented by Louis Rittener, its duly qualified agent and attorney in fact". Under these circumstances, while the way in which the appeal was taken and the bond drawn may be objectionable from the standpoint of technically correct pleading, the appeal taken by the party filing the answer which joined the issue and who is recognized in appellees' pleadings as the agent and attorney in fact of the city of Carouge, must be held to be the appeal of the latter.

The motion to dismiss is denied.

### ON THE MERITS.

Testamentary substitutions and *fidei commissa* have been prohibited in this State from the earliest times.

This prohibition was established in the interest of public order and State policy, and held to embrace within its scope the trust estates of the common law.

Numerous decisions of this court attest the jealous care with which this policy of the law has been enforced.

From the adoption of the Code of Louisiana of 1808 down to the year 1882, no legislative enactment appreciably modified its force or weakened the stringency of its application to testamentary dispositions.

In the latter year, however, a marked divergence from the beaten path of the law, in this respect, appeared among the statutes of the State. Act No. 124 of the Acts of 1882 was adopted, the object of which is to exempt all donations *mortis causa* or *inter vivos* made to trustees for educational, charitable or literary purposes, or for the benefit of educational, literary or charitable institutions already existing or to be founded, from the operation of the laws of the State relative to substitutions, trusts and *fidei commissa*.

It is part of the history of the State of that period that this departure from, or rather modification of, the ancient policy of the law was coincident with the munificent dispositions made, or then about to be made, by the venerable and philanthropic Paul Tulane, for the laudable purpose of founding in the city of New Orleans, where his active life had been spent and his fortune amassed, a great university, which, bearing his name, stands to-day alike a justification of the aforesaid modification of the law of trusts, a monument to his memory, and a blessing to mankind.

As the law of Louisiana now stands, therefore, donations and bequests can be made to trustees for educational, charitable, or literary purposes, or for the benefit of institutions, existing or to be founded, the object of which is to promote education, literature, or charity.

But it is clear from the language of the Act of 1882 that its intention is to restrict this permission to educational, charitable and literary objects within the State of Louisiana, and to institutions founded or to be founded under the laws of the State for such purposes.

As the city of Carouge, a political institution in a foreign jurisdiction, can never exercise authority of any kind within the State of Louisiana, nor incorporate itself under our laws, nor authorize trustees to incorporate themselves here for the purpose of dispensing charity, it must be held that the Act of 1882 can have no bearing, operation, or effect on the legacy under consideration, and no influence in the settlement of the question raised.

It is equally clear that the charity intended by the bequest of the testator was to find its practical application in Switzerland and not in Louisiana.

We may, therefore, dismiss the Act of 1882 from further consideration.

The legacy to the city of Carouge is to be judged by the codal provisions of the law as the same stood prior to the Act of 1882, and stand or fall according as it may, or may not, measure up to the requirements of a valid testamentary disposition.

The question, then, just now to deal with is:—does this bequest evidence a substitution or *fidei commissum* prohibited by the law?

To create a substitution is to bequeath property to one or more, to be succeeded in the enjoyment thereof by others designated by the testator.

The *fidei commissum* is to bequeath property to be held for and delivered to another. It is a mandate or trust, with no interest conferred on the legatee who is charged only to preserve and deliver. Succession of McCann, 48 La. Ann. 157. It is a charge to receive for and deliver to another. 5 N. S. 303.

To fall, this legacy must come clearly within the scope of one or the other of these prohibitions, for the law and the courts lean to the upholding of the dispositions made by testators of their estates.

Eminent civilians have declared that "wherever the testamentary power has been established, a will or testament is an exertion of human liberty and of human volition over property", and by others truly has it been said that "the last will of those who depart this life is the last expression of their love, friendship and gratitude", to be regarded as sacred, and where it violates no law to be respected even as the grave of the dead is respected. Succession of Michon, 30 La. Ann. 217.

To anathematize the dispositions of wills, to decree them null, it must clearly appear they come within the prohibitions of the law. 7 N. S. 416. A doubt existing must be resolved in favor of their validity. C. C. 1713; 4 R. 204, 409; 7 N. S. 417; 4 N. S. 47; 4 La. Ann. 504; 8 La. Ann. 173; Succession of Auld, 44 La. Ann. 593.

The argument against the will is it was the intent of the testator that the Commune of Carouge should have his estate and be charged with the duty or trust *to preserve the same for* indefinite third persons, to-wit:—"two poor girls" and "ten old persons of the two sexes", to whom, annually, its profits should be paid—not to the same "two poor girls" and "ten old persons" each year, but to such persons fulfilling that designation whom, each year, the Commune may, in its

discretion, select as beneficiaries of the charity. The requirement is that it be paid out each year to such persons. As to that, the Commune has no discretion; but has discretion as to the choice of persons to become the recipients of the bounty, provided they are "poor girls", in the one instance, and "old persons" in the other instance.

The argument, further, is that while this clause in the will may not constitute a substitution, it does create a trust and *fidei commissum;* that it is a bequest in trust to the city of Carouge, which is charged with the duty of holding, preserving, administering and investing the legacy and applying its profits to the amelioration of the condition of certain indefinite and innominate persons, to-wit:—two poor girls and ten old persons; that the city is the instrumentality made use of by the testator for *preserving* and conveying his estate to the indefinite persons named; that if the bequest had been made to "two poor girls" and "ten old persons", residents of the city of Carouge, it would be void for uncertainty; for instance, what "two poor girls", what "ten old persons"; that to avoid this uncertainty the bequest is made to the city of Carouge as trustee to select the "two poor girls" and "ten old persons" who, annually, shall be the beneficiaries of the bounty of the testator; that, thus, to the city of Carouge a commission in perpetual trust is given to be executed; that the funds representing the legacy are to remain unimpaired, are to be preserved indefinitely and the proceeds of the investment of the same are to be distributed by the city as the commissary or attorney in fact of the testator to the girls and old persons annually who may be selected by the trustee; and that the clause in the will, therefore, is a testamentary disposition committing to the choice of a third person the institution of the beneficiary of the will and comes under the express ban and prohibition of Art. 1573 of the Code.

This argument would prevail if it were the only interpretation of which the will is susceptible. But there is another view to be taken of the will and, we think, a legal one.

While the testator willed his estate real and personal in Louisiana to the Commune of Carouge, he directed his executors to sell the property and to convert all the effects of the estate into cash and to transmit the funds thus derived to the legatee. The executors have obeyed this injunction by selling the property and the proceeds thus derived, minus the debts and charges of the administration, are the subject of this controversy.

This will, therefore, does not complicate the simple tenures by which alone our laws permit the property to be held, nor does it tie up indefinitely and take out of commerce the property of the succession. Money was really the thing donated and it was contemplated it should be used by the legatee so as to produce an annual revenue, which is not to be preserved and returned to another, but is to be applied to pious or charitable purposes.

The title intended is one to the city of Carouge in full ownership, with a destination to pious or charitable uses. Such a disposition is lawful and may be carried into effect if the uses to which it is to be put be such for which the city would be otherwise bound to provide. One of the directions of the will is to provide for old persons of the two sexes, and one of the duties recognized in all enlightened countries as resting upon communities incorporated into cities is to care for the indigent. 8 La. Ann. 259.

Legacies for pious uses are described to be those which are destined to some work of piety, or object of charity. 8 La. Ann. 171.

They are not only not prohibited by the law, but viewed with favor Id. It is no objection to the validity of a legacy to pious uses that it is for the benefit of the poor. The legatee of such a legacy is vested with the title, even though the destination affixed to the property by the testator follow it in his possession. 8 La. Ann. 172.

The law makes no distinction between a legacy to the poor of a city and a legacy to the city for the poor. In both cases it is a legacy for pious uses and the city is the recipient. McDonogh Will Case, 8 La. Ann. 247.

Legacies for pious uses are recognized by the law for the purpose of procuring aid from individuals in supplying those wants which the State itself, or the communities into which it is divided, are bound to provide for in the interest of society and as a function of government, falling within the circle, or coming within the scope of, the duties of government. 8 La. Ann. 249.

The police and good order of a city include the education of youth and the care of the poor within its limits. Deduced at first from the principles of Christianity it has become an elementary principle in the theory of government. McDonogh Will Case, 8 La. Ann., 255; Domat, Des Comm., 107.

When analyzed the provisions of this will are found to be lawful. simple and reasonable, to contain nothing hostile to any considera-

tion of public policy.   There is no trust created by it.   The bequest is absolute to the city of Carouge for all time, burthened only with a charge to dedicate it to pious and charitable uses.

It is not obnoxious to the maxim *"le mort saisit le vif"*, for the title of the estate is immediately vested in the Commune of Carouge.   It is not to be surrendered at any time to any one.   No one is named to whom the estate is to be transmitted.

The direction that the proceeds of the property are to be placed at interest and the profits thus derived are to be used in the way indicated in the will, does not bring it within the scope of the prohibitions of the law.   This direction is, we think, more to be regarded as in the nature of a request to the legatee.   It was the expression of a wish, a desire.   It was not a disposition.   It was advice and recommendation.   C. C. 1713, we think, authorizes this meaning to be given to the words.   8 La. Ann. 237.

It will be observed that it was only with regard to the interest on the fund representing the estate that any request is made or direction given, and even that is not required to be preserved for, or disbursed to any particular person named.   In a general way, two poor girls and ten old persons annually are directed to be aided from the profits of the fund, but this must be held to be within the discretion of the commune as to the persons to be aided, for no particular poor girls or old persons are invested with the right of enforcing the disposition.

This does not come within the scope of *fidei commissum* which, as we have seen, is understood to be a disposition, *causa mortis*, by which the heir, or legatee, is requested to give, or return, a certain thing to another person.   Domat, Lib. 4, tit. 2, Sec. 2.   By "another person" is meant a person or institution so named or indicated as to *individualize* him, or her, or it.   That is not the case here.   This bequest is to the city of Carouge, and to it alone.   8 La. Ann. 172.   It was in no sense a legacy to any other person.   The direction to use the interest for a given purpose did not vest any part of the legacy in any particular person as beneficiary thereof.

The city of Carouge is instituted universal legatee.   By virtue of this institution, it is clothed with full right of ownership over the funds of the succession.   There is and can be no substitute to take the estate at any time.   The city has perpetual existence.   It is a moral person perpetually renewed by the successive renewal of its inhabitants.

While this legacy to it is to be viewed as one burthened with the charge of a specific destination for the behoof of the city, the latter is not encumbered with the duty of returning it at any time to any one.

It is an obligation consisting *in faciendo,* nothing more. 8 La. Ann. 230. It is a gift to the city made *in presenti,* with the charge of specific destination, and since taking care of the destitute is a duty devolving on municipalities, this legacy is really to be viewed as one to the city of Carouge with the charge of investment for its own interest.

The most that can be said against the legacy is that it is one with a charge. But this does not make it a *fidei commissum,* for, under the law, charges and conditions may be placed on all heirs and legatees, except *forced* heirs as to their *legitime.*

We hold that the city of Carouge, under the proper view to be taken of this will, is in no sense a trustee. It holds the legal estate of the property or funds donated to it. The terms of the will are terms of disposal. They express the transfer of ownership from the person of the testator to the legatee. The disposition and control of the fund after it is placed in the city's hands would be in virtue of ownership, not trusteeship. The testator did not devise the legacy to persons needing and entitled to receive charity, though it was the object and intention that needy persons are to be benefited by it; if carried out.

Succession of Burke, 51 La. Ann. 538; City of New Orleans vs. Hardee, 43 La. Ann. 255.

But even if the legacy had been devised directly to the poor of the city of Carouge, it would come within the letter of the law, for the city could and would take charge of it and administer it for the beneficiaries. C. C. 1549; Fink vs. Fink, 12 La. Ann. 301; 8 La. Ann. 256.

We think the needy persons intended to be benefited by the provision of the will are those of the city of Carouge coming within the description of the will.

This case, we think, comes within the rule of those decisions of this court of which Milne's Heirs vs. Milne's Executors, 17 La., McDonogh Will Case, 8 La. Ann., and the Western Star Masonic Lodge Case, 38 La. Ann., are types, rather than within the rule of those decisions of which the Succession of Franklin, 7 La. Ann., is a type.

The case of the Succession of Burke, 51 La. Ann. 538, cited by

plaintiffs, is not in point, and that of the Succession of J. B. Kernan, 52 La. Ann. 48, is to be differentiated from the instant case.   There the devise was to Archbishop Janssens, of the diocese of Louisiana, and to his successors, of certain real property (lots and houses) in the city of New Orleans, "upon condition that out of the revenues or rents thereof an asylum or home for the poor of both sexes shall be founded, endowed and maintained similar, so far as possible, to that of St. Michael's, in the city of Rome, Italy". Sustaining the attack of the heirs on the will on the ground that it sought to create a *fidei commissum* and proposed a prohibited substitution, the court said:— "Whether we hold the church or the Archbishop to be the legatee, we are confronted with the difficulty arising from the title the will seeks to create. The will conveys no ownership. The title, such as it is, is one of mere administration. Whether held by the church or the Archbishop, the property is to be forever inalienable".

The court held the will obnoxious in seeking to introduce an impossible and illegal tenure, and that no such title as that conveyed has any place under our system of laws.

Here the real bequest was a legacy of money, for the will directed the sale of the property, the proceeds of which were devised to the city of Carouge for pious and charitable uses. No property here was to be held forever inalienable.

Had the argument advanced by plaintiff in the case at bar been sustained in the McDonogh Will Case, where substantially it was made, the munificent bequests made by that philanthropist to the cause of education in the cities of New Orleans and Baltimore would have failed, and the enduring monuments to his memory, in the form of commodious and substantial public school buildings which dot the former city all over, would never have been erected.

Had it been made and sustained against the bequest of Alexander Milne in 1841, the town of Fochabers in Scotland would never have enjoyed the bounty of its native son, who, amassing a fortune here, devised a portion thereof ($100,000) to that municipality for the establishment and maintenance of free schools, and the Duke of Richmond's suit in its behalf (17 La. 320) would have been in vain.

If it had been made by the legal heirs of James Smithson in the courts of Great Britain, and *sustained,* against the princely bequest of one hundred thousand pounds sterling devised by that enlightened Englishman to the United States for the purpose of founding at the

Capital of the Republic a great scientific institution "for the increase and diffusion of knowledge among men", the Smithsonian Institute would not to-day be in existence.

The law of Louisiana is not the illiberal institution the argument against the validtiy of Francois Meunier's will presupposes. We find nothing prohibitive of the transmission of the funds of the legacy to the Commune of Carouge, there to be dedicated to the charitable uses intended by the testator.

But it is insisted, the city of Carouge is incapable of receiving the legacy and one of the grounds advanced for this contention is that the treaty of 1850 between the United States and the Swiss Republic restricts the right of acquiring property in the territory of the other to *citizens,* and that this excludes the city of Carouge, which cannot be held included within the term "citizens".

The city of Carouge is a political corporation, such an one as is defined by our Code as "an intellectual body". C. C. 427. It is a college of inhabitants, the members of which succeed each other, so that the body continues always the same, notwithstanding the change of the individuals which compose it, and which, for certain purposes, is considered as a natural person. C. C. 427. Such corporations are substituted for persons, may possess an estate, have a common treasury and *are capable of receiving legacies and donations.* C. C. 433.

It is too narrow a construction, therefore, which excludes the city of Carouge from the benefits of the I. and V. articles of the treaty with the Swiss Confederation. The latter article gives to heirs, whether by testament cr without, of citizens of each of the contracting parties the right to succeed to property, to inherit it and take possession thereof, with the further stipulation that where one, who, on account of being an alien, cannot hold real property (if such be the case), he is to be accorded the right to sell same and remove the proceeds.

Our law declares "all persons may dispose or receive by donation *inter vivos* or *mortis causa,* except such as the law expressly declares incapable". C. C. 1470. Cities and corporations are ranked among persons and they are not incapable.

"Corporations are placed by our laws on the same footing as natural persons as to their capacity to take by devise". 17 La. 54.

"Donations may be made in favor of a stranger, when the laws of

his country do not prohibit similar dispositions from being made in favor of a citizen of this State." C. C. 1490.

The treaty with Switzerland permits citizens respectively of the United States and of the Swiss Republic to make such dispositions of property in favor of each other, and the laws of Switzerland do not prohibit dispositions of property from being made in favor of citizens of this State or of the United States.

The Procureur General of Switzerland certifies that no law of that Confederation places any obstacle in the way of the acceptance of a legacy of the nature of that of Francois Meunier's will when the Council of State authorizes the acceptance, and it is shown that this authorization has been duly given.

But it is insisted, as further ground for the contention that the city of Carouge is incapable of receiving the legacy, that this authorization by the Council of State was necessary because the legacy contained a charge, and the law of Switzerland does not permit municipalities to accept "any legacy or donation containing any charges or conditions". From this the argument proceeds that at the time of the death of the testator and the probate of his will, the legatee, city of Carouge, did not possess the capacity of inheriting or taking the legacy, that the legal heirs did, and that the ownership and seizin thus invested in the latter could not by any subsequent event be taken away.

We do not find that there is any prohibition in the laws of Switzerland against municipalities accepting legacies. Only that where such legacies contain a charge or condition *the permit* of the Council of State to accept must be had. The capacity to accept, therefore, exists—to become executory, however, in case a charge or condition is attached to the legacy, only upon permission being granted by the Council of State. Where the legacy contains no charge or condition the capacity to accept is executory in full right; where there is a charge or condition this capacity to accept is merely suspended until the permit is granted. There was, then, no *want* of capacity in the city of Carouge to accept, and when the Council of State acted, as it did, and gave the permission to accept, the bar was removed.

The case of the First Congregational Church vs. Henderson, 4 R. 210, cited in opposition to this view, is not in point, for there, at the time of the testator's death, there was a positive *prohibition* in the charter of the church against receeiving any legacy exceeding $1000.

Succession of Meunier.

So the court held properly that "the *want of capacity* at the death of the testator, resulting from a positive statutory prohibiion then in force, cannot be supplied, cured or removed, by any subsequent legislative enactment".

In the instant case there was no "absence of those qualities required in order to inherit" at the moment the succession was opened. C. C. 950.

The legatee here existed at the time the testator died (C. C. 953) and possessed the heritable quality, the *exercise* of which was merely suspended until permission to accept was had from the Council of State. The *capacity* to receive was one thing, and existed; the *exercise* of it was another thing, and was merely inoperative until the Council of State acted. C. C. 1473; Milne's Heirs vs. Milne's Executors, 17 La. 46.

Many years ago in this State Julian Poydras, dying, bequeathed by will thirty thousand dollars to the parish of Point Coupee, and a like sum to the parish of West Baton Rouge, the interest on which he directed to be appropriated as dowries to the indigent young women of the parishes to encourage their marriage. Trouble arising as to the power or capacity of the parishes to accept the legacies, the Legislature passed acts authorizing the police juries of the said parishes to accept the same, and it was done. 17 La. 55; Acts of 1825, p. 82; Acts of 1837, No. 29.

We hold against plaintiffs on both the grounds urged against the capacity of the city of Carouge to receive and take the legacy, and deeming the legacy not one coming within the prohibitions of the law, it follows that the will attacked must be sustained as a valid disposition of the testator's estate.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered and decreed that the demand of plaintiffs' herein be rejected and dismissed.

It is further ordered, etc., that the last will and testament of Francois Meunier, deceased, be sustained as a lawful testamentary disposition of property, and the executors thereof are directed to recognize the city of Carouge, Canton of Geneva, Switzerland, as the universal legatee under said will, and to pay over to the said city, or its duly accredited representative, the funds on hand representing the net proceeds, after payment of the debts of the deceased and the charges

94    SUPREME COURT OF LOUISIANA.

of administration, of the sale of the property of the estate of the testator.

It is further ordered, etc., that costs of this proceeding in both courts be taxed against plaintiffs.

BREAUX, J., concurs in the decree.

MONROE, J., having decided the case in the court of first instance, takes no part in the decision on the appeal.

Rehearing refused.