195 So.2d 114

**Succession of Lillie Weir SIMMS,
widow of Edward F. Simms.**

**Nos. 47706, 47707, 47712, 47713.**

Nov. 8, 1965.

On Rehearing Nov. 7, 1966.

Second Rehearing Denied Feb. 20, 1967.

Eugene D. Saunders, Lawrence K. Benson, Guy C. Lyman, Jr., Milling, Saal, Saun-

ders, Benson & Woodward, Leonard Oppenheim, H. Alva Brumfield, New Orleans, Sylvia Roberts, Baton Rouge, Decatur J. Holcombe, Houston, Tex., Chester A. Eggleston, New Orleans, for applicants.

Jack P. F. Gremillion, Atty. Gen., for amicus curiae.

Sidney Wright, Cobb & Wright, Morris Wright, Joseph V. Ferguson II, Wood Brown, Montgomery, Barnett, Brown & Read, John L. Toler, E. Harold Saer, Jr., Chaffe, McCall, Phillips, Burke, Toler & Hopkins, Sumter D. Marks, Jr., Louis B. Claverie, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for respondents.

HAMITER, Justice.

Mrs. Elizabeth Franzheim Reese instituted this action in which she attacks the last will and testament of her late grandmother, Mrs. Lillie Weir Simms. According to her petition, filed in the succession proceedings of the testatrix, plaintiff attempts to (1) annul certain trust provisions contained in the will, (2) nullify the will's probate insofar as the trust provisions are concerned, and (3) cancel the district court's judgment which sent into possession the various persons named in such provisions.

All whose interests would be affected by the attack were made defendants, namely, the beneficiaries of the trusts, the trustees, the testamentary executors, and plaintiff's brother and sister.

The district court rendered judgment in favor of plaintiff, as prayed for. Various defendants then appealed to the Court of Appeal, Fourth Circuit, where the judgment was affirmed. 175 So.2d 113. (As pointed out in a footnote in the Court of Appeal opinion, "The last testament of Mrs. Lilly Weir Simms provides that if any legatee or devisee contests it or by legal procedure interferes with the handling of the estate, then that legatee or devisee shall take nothing under her will or out of her estate. For this reason, Kenneth Franzheim, II, has appealed only in his capacity as executor and trustee, and not individually. For the same reason Mrs. Lilly Franzheim McCullar has appealed only in her capacity as provisional administratrix.")

The litigation is presently before us on writs of certiorari granted on the separate applications of some of the defendants. 175 So.2d 111–112.

The case was tried in the district court on a stipulation of facts and on certain pertinent exhibits. According to the record the testatrix (plaintiff's grandmother), whose domicile was in Texas, died on May 1, 1957. She was survived by only one child, Mrs. Bessie Simms Franzheim, who was the mother of this plaintiff and of Kenneth Franzheim, II and Lillie Franzheim McCullar, the latter two being among the defendants herein. In her will Mrs. Simms bequeathed to her daughter one-third of her Louisiana property. The remaining two-

thirds she left in trust for the benefit of Kenneth Franzheim, II, Lillie Franzheim McCullar, and various great grand-children. Among the latter were plaintiff's three minor children who are also defendants in this action. These trust bequests are the ones assailed in this proceeding. (The controversial provisions of the testament are quoted in full in the opinion of the Court of Appeal. Because of the conclusion we have reached with regard to plaintiff's right to proceed in this action, as hereinafter discussed, we deem it unnecessary to detail them in this opinion.)

Mrs. Simms' succession was opened in Texas, her domicile. In the proceedings there the will was probated and the testamentary executors confirmed. These executors later commenced ancillary probate proceedings in the district court for Plaquemines Parish, Louisiana, and therein sought to have the testament made executory with respect to the Louisiana property affected thereby. On the joint petition of such executors and of Mrs. Franzheim, individually, a judgment was rendered on July 21, 1958, sending the legatees (including the trustees) under the will into possession of the Louisiana estate.

On December 15, 1959, Mrs. Bessie Simms Franzheim, who also was domiciled in Texas, died, she being survived by the three above named children, including this plaintiff. She left a will in which she bequeathed to her son (Kenneth Franzheim, II) and to one of the two daughters (Mrs. Lillie Franzheim McCullar) certain specified property located in Louisiana; and, after a number of particular bequests, she designated those two children as her residuary legatees. Her said son, and W. P. Hamblen and Alden K. Boddeker were named executors. The plaintiff was not mentioned in Mrs. Franzheim's will.

Thereafter, plaintiff filed a suit in Texas attacking the validity of her mother's will. Later, with respect to that testament, ancillary probate proceedings were commenced in Louisiana on the petition of Mrs. McCullar, a resident of this state; and therein she was appointed provisional administratrix of her mother's estate inasmuch as the testamentary executors could not act until their right to do so under the will had been established in the Texas litigation. (In this connection plaintiff, in her brief to this court, notes " * * * Mrs. Franzheim left a will, the validity of which was litigated in Texas, and during the pendency of these proceedings (the instant litigation) its validity was upheld in Texas. Thereafter, it was probated in ancillary proceedings in Plaquemines Parish, as will appear from the substitution of the Testamentary Executors named therein for the Provisional Administratrix in the Succession of Franzheim by order in the Court of Appeal dated December 23, 1964. * * *") Also see Reese v. Franzheim, Tex.Civ.App., 381 S.W.2d 329.

Pending the attack on her mother's will in the Texas courts, the plaintiff, on November 27, 1961, filed the instant action in her grandmother's ancillary succession proceeding, she seeking (as we have said) to set aside the trust bequests in the will of Mrs. Simms, the will's probate and the judgment sending the several legatees (including the trustees) into possession. In this action plaintiff contends that the assailed trust provisions constituted prohibited substitutions under the laws of Louisiana, and, consequently, they and the judgment purporting to perpetuate them were null and void and of no effect with respect to the Louisiana properties, the result being that her grandmother died intestate as to those bequests so that such properties were inherited by the testatrix's sole forced heir (plaintiff's mother) and should now properly form a part of her mother's succession.

■ Mrs. Simms' testamentary executors have filed in this court an exception of no right of action in which there is alleged a want of interest in the plaintiff, the exceptors pointing out that she is a stranger to the estate of her grandmother for the reason that she was not an heir of Mrs. Simms and that she acquired no seizin in the succession of her mother, Mrs. Franzheim. (We note that this exception was not filed on behalf of all of the defendant litigants. But we consider this of no. importance inasmuch as the failure of right or interest in a plaintiff to institute suit may

be noticed by this court of its own motion. Code of Civil Procedure Article 927.)

In the pertinent portions of the brief of plaintiff, where she asserts the basis of her right to proceed in the instant litigation, she contends: " * * * It is not contended by Mrs. Reese that she is the heir of her grandmother. She is the heir of her mother and as such, asserts the same right which her mother had to establish the absolute nullity of the disputed dispositions of Mrs. Simms' will. This is manifest from Articles 944 and 945 of the Civil Code. The heir being considered as having succeeded to the deceased from the instant of his death, the * * * effect of this right is to authorize the heir to institute all the actions, even possessory ones, which the deceased had a right to institute and to prosecute those already commenced, for the heir in everything represents the deceased and has a full right in his place as well for his rights as his obligations. * * * " In support of this. contention plaintiff relies primarily on Hoggatt v. Gibbs, 12 La.Ann. 770 and Gahn v. Brown et al., 160 La. 790, 107 So. 576, and on Articles 940–945 and 1607 of the Louisiana Revised Civil Code.

At the outset we hold that the cited decisions are not authority for such contention. In the Hoggatt case the right or interest of the plaintiff does not appear to have been questioned and is not mentioned in the opinion; nor did the court in any

manner consider an issue respecting his seizin. Likewise, in the Gahn case, the right of the plaintiff to proceed was not mentioned. Moreover, he was *the forced heir of his deceased grandfather,* the latter having died *after* the plaintiff's mother. Consequently, plaintiff had every right, *as a forced heir of his grandfather,* to sue to reduce a donation which impinged on his legitime.

Under Article 941 of the Louisiana Revised Civil Code the right of seizin given to the heir by Article 940 is by operation of law alone. Under Article 942 he is "considered" seized of the possession of the succession. Article 945 authorizes such heir with seizin to institute all the actions which the decedent had a right to institute. And Article 1607 provides that forced heirs are seized of right at the death of the testator. However, Article 1659 authorizes the testator to "give his testamentary executor the seizin of the whole of his succession * *." Therefore, in cases where the testator leaves forced heirs and has given seizin to his testamentary executor there obviously is (under the codal articles) a conflict between such heirs and the executor insofar as the benefits arising out of the right of seizin are concerned.

But in our opinion this obvious conflict can be resolved if we interpret Articles 941 and 1607 to mean that the heir acquires seizin by operation of law on the death of the testator only when the latter in his will has made no other legally authorized disposition of the seizin. (It is our duty to resolve such a conflict if a reasonable construction can achieve that end. See Article 17 Revised Civil Code; City of New Orleans v. Board of Supervisors of Elections for the Parish of Orleans, 216 La. 116, 43 So.2d 237; Hall v. Rosteet, 247 La. 45, 169 So.2d 903; and Crawford v. Alatex Construction Service, Inc., 120 So. 2d 845, Court of Appeal, cert. denied.)

The suggested interpretation was given such codal articles in Succession of Serres, 135 La. 1005, 66 So. 342, and it appears to be the last expression of this court on the subject. In that case, which involved a dispute between the forced heir and the testamentary executor with seizin, the court reviewed extensively and in detail the prior jurisprudence, noted that there had been misleading, and perhaps, conflicting statements in the dicta of certain opinions, and concluded that " * * * the law is correctly interpreted in the opinion in Bird v. Succession of Jones, [5 La.Ann. 643, 645] in the statement that: 'The actual seisin of an executor is something distinct from and paramount to the fictitious seisin, which, it is said, is vested in the heir immediately upon the death of the ancestor.' " Therein, prior statements or holdings of the court to the contrary were specifically overruled.

Consequently, if Mrs. Franzheim, in her will, granted seizin to her executors it cannot be said correctly that on her death seizin

devolved on plaintiff, as a forced heir, by operation of law.

Article 1660 of the Revised Civil Code provides: "The testator may express his intention to grant the seizin of his estate to the testamentary executor, either in express terms, *by authorizing him to take possession of the whole,* or a part of the estate of his succession after his death, or by merely appointing him testamentary executor and detainer of his estate; * * *." The clause in Mrs. Franzheim's will that appoints the executors reads: "I hereby nominate, constitute and appoint my son, Kenneth Franzheim, II, and W. P. Hamblen and Alden X. Boddeker as *Independent Executors* of my will, and I direct that no bond shall be required of them and that *no other action shall be had in the Court having jurisdiction of my estate relating to the settlement of the same* than the probating and recording of this, my will, and the return of statutory inventory, appraisement and list of claims of said estate and of all claims due or owing by me at the time of my death." (Italics ours.)

■ The statutory law and jurisprudence of Texas relating to the making of wills (of which we are permitted to take judicial notice by Article 1391 of the Code of Civil Procedure and which are pertinent here in determining the intention of the testatrix since she was domiciled in such state) permit the appointment of *Independent Executors who are authorized by such designa-* *tion to take control and custody of the estate for the purpose of completely managing and administering it, independently of and without orders from the probate court, and to have the right to do whatever the testator could have done in his lifetime.* See Vernon's Civil Statutes of the State of Texas, Probate Code Sections 145 et seq.; Hutcherson v. Hutcherson et al., 135 S.W.2d 757 (Tex.) and Schramm v. Hoch, 241 S.W. 1087 (Tex.). Clearly a grant of that kind to an *Independent Executor* evidences an intent to authorize "him to take possession of the whole" of the estate—such as would effect the giving of seizin under our law (Revised Civil Code Article 1660). It follows, therefore, that since the testamentary executors were granted seizin by Mrs. Franzheim, the seizin did not, on her death, devolve upon her heirs.

Incidentally, the authority given to her executors by Mrs. Franzheim is far broader and greater, it appears to us, than that encompassed in the language used by the testator in Succession of Hale, 26 La.Ann. 195, as follows: "I do hereby appoint my wife Josephine Jones the natural tutrix and executrix under this will, relying on her good judgment and discretion in the administration for the benefit of herself and children * * *" On an opposition by the heirs to the executrix's receiving a commission, they alleging that she was not given seizin of the property by the will, this court approved the ruling of the district

court which was: "* * * It appears * * * that it is sufficiently clear, from the tenor of the will, that the testator had the desire to give the seizin to the executrix. *Any disposition or recommendation from the testator to his executor in regard to the mode in which his property is administered, is a sufficient indication of his desire to grant the seizin.* That it is not necessary that the word seizin be inserted in the will to confer the power. * * *" (Italics ours.)

■ Moreover, we note that the instant action was not instituted until November 27, 1961, or after the effective date of the new Code of Civil Procedure; and in her brief to this court plaintiff recognizes that, even though the litigation was filed in the original succession proceedings, it is controlled by the provisions of that Code. As a consequence, Article 3211 thereof seems to eliminate the provisions of Article 945 of the Revised Civil Code which authorize the heir with seizin to institute all actions that the deceased had a right to bring. It provides: *"A succession representative shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor."* And in the "Official Revision Comments" found thereunder it is said: "(a) This article is a departure from the law relating to seizin. The utility of the concept of seizin in Louisiana law is doubtful, since as a practical matter the succession representative has full seizin of all the property of the deceased. McMahon 1688, n. 211." (Italics ours.)

■ Inasmuch as plaintiff was not an heir of her grandmother (her mother, Mrs. Franzheim, was living at the time of the testatrix's death), she is a stranger to Mrs. Simms' succession. Also, since she did not acquire seizin of her mother's estate she was without right or interest to attack her grandmother's testament or the probate proceedings connected with it.

Of course, as a forced heir of her mother plaintiff has a right to demand a reduction of the bequests left by Mrs. Franzheim. But a demand of that kind is not made in this action.

In a supplemental brief filed here, following the submission of this case, the plaintiff confidently asserts that Cox et al. v. Von Ahlefeldt et al., 50 La.Ann. 1266, 23 So. 959 completely sustains her position that she can maintain this action as one which her mother could have instituted. But even a cursory reading of that opinion reveals that such decision is not at all controlling.

In the Cox case the deceased grandfather had disposed by will of all of his property in Louisiana without providing for a grandchild, Susan Robinson, who was living at his death and (as pointed out in the opinion) *was a forced heir* inasmuch as her mother (the testator's daughter) *had predeceased the testator. Without having*

*taken any part in her grandfather's succession in this state, or in the distribution of the effects thereof,* Susan died. Within the time permitted by law collateral heirs of Susan brought suit to have the latter recognized as a forced heir of her grandfather, entitled to her legitime, and to have her grandfather's bequests reduced accordingly. The legatees urged that the collateral heirs of Susan had no right to bring the action because such right would devolve only on forced heirs of the forced heir. However, the court held that under the explicit language of Article 1504 *any heir* (as well as an assignee) of a forced heir could bring *an action for the reduction of excessive donations.*

That case is not applicable here because (among other reasons) this *plaintiff is not suing to reduce the bequests of Mrs. Simms as exceeding the disposable portion* and to recover the legitime owing to the now deceased daughter, Mrs. Franzheim. And even if she were she could not succeed for the obvious reason that Mrs. Simms' bequests did not exceed the disposable portion. Rather, the testatrix specifically bequeathed to the only forced heir (plaintiff's mother) the portion legally due her.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside, the peremptory exception of no right of action is maintained, and plaintiff's suit is dismissed. All costs are to be borne by plaintiff.

FOURNET, Chief Justice, dissents, being of the opinion the judgment of the Court of Appeal, 4th Circuit, in a well considered opinion properly resolved all the issues involved in this case. See 175 So.2d 113–128.

## ON REHEARING

FOURNET, Chief Justice.

Mrs. Lillie Weir Simms, widow of Edward F. Simms, died testate in Texas, where she lived, on May 1, 1957, leaving surviving her one daughter, Mrs. Bessie Simms Franzheim. The major portion of her estate consisted of (1) real and immovable property in St. Martin Parish, Louisiana, and (2) oil producing leasehold and royalty rights affecting real or immovable property in the parishes of Acadia, Cameron, Lafourche, Plaquemines, and St. Martin. The total value of her estate in Kentucky, Louisiana, and Texas was $7,-075,533.56, the Louisiana portion thereof being valued at $5,876,155 for federal tax purposes, $3,088,000 of which is the estimated value of the property in Plaquemines Parish.

Mrs. Simms acquired the Louisiana property in 1954 when the Southern Sulphur Corporation was liquidated, she, as principal stockholder, being granted 69.30% of the corporation's interest in the St. Martin realty and State Leases Nos. 192, 194, and 195, then being developed by the Gulf Refining and Superior Oil companies as assignees. Of this amount ½ was placed in

the inter vivos trusts created by Mrs. Simms in 1954 referred to in her will. The remaining ½ constitutes the Louisiana portion of her estate.

In her will, Mrs. Simms bequeathed ⅓ of her Louisiana estate to Mrs. Franzheim, as the portion to which she was entitled under the law of this state. After certain specific bequests, she disposed of the remainder of her estate in Article XIX of the will, which forms the basis for this litigation, and which reads as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and character and wheresoever situated, I give, devise and bequeath as follows:

"(A) One-half (½) thereof in Trust to Bessie Franzheim, Kenneth Franzheim II, Alden X. Boddeker, Henry C. Riquelmy and W. P. Hamblen, and their successors, the Trustees named in the LILLIE WEIR SIMMS TRUST FOR LILLIE FRANZHEIM McCULLAR, which Trust Agreement is recorded under file #69835 in Book 103 of Conv., Page ——, and Book 1 of Don., Page ——, et seq., in the Parish of Cameron, State of Louisiana,[1] to be held and administered by them and the income from which shall be invested or distributed at the sole discretion of said Trustees, and shall be held by said Trustees and their successors

with the same rights, powers and duties as are set forth in the above named Trust Agreement, save only that the income from the properties herein bequeathed to them as such Trustees may either be invested by them or distributed to the beneficiary, at their sole discretion, and said beneficiary shall not have the right to demand any distribution to her should the Trustees, in their sole and unlimited discretion, decide that such distribution is either unnecessary or unwise. Said properties herein bequeathed to said Trustees shall be held by them for and during the natural life of my said granddaughter, LILLIE FRANZHEIM McCULLAR, if she survives me, and after her death or my death, whichever occurs last, said properties shall pass to my great-grandchildren LILLIE CELESTE Mc-ASHAN, KENNETH ALEXANDER Mc-ASHAN, ELIZABETH SIMMS Mc-ASHAN and MICHAEL M. McCULLAR, share and share alike, subject to the provisions of Paragraph (C) hereof.

"(B) [In this paragraph Mrs. Simms bequeathes the other half of the remainder of her Louisiana property to the named trustees of the inter vivos trust established in 1954 for the benefit of her grandson, Kenneth Franzheim II, under identical words and conditions as those contained in the testamentary trust for Mrs. McCullar, except that this portion

---

1. This inter vivos trust agreement is sought to be incorporated in the will by reference only, as are all of the others sought to

be made a part of the seven created under Paragraph (C).

**197** ▬ **198**

of her estate would, after the death of Mrs. Simms and/or Kenneth Franzheim II, whichever occurred last, pass to the seven great-grandchildren of Mrs. Simms, i. e., the four children of Mrs. McCullar listed in Paragraph A, and the three children of Mrs. Elizabeth Franzheim Reese, the plaintiff, by her marriage to Dr. Benjamin F. Kitchen.]

"(C) In the event that at the time of the vesting of such properties in my said great-grandchildren, any of my said great-grandchildren named herein should be under the age of twenty-one (21) years, then and in that event the properties herein bequeathed to such minor shall pass to and become the properties of the Trustees of such great-grandchildren under the trusts which I have heretofore created and which I now create as follows:

"(1) LILLIE WEIR SIMMS TRUST FOR LILLIE CELESTE McASHAN being file number 69836 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;

"(2) LILLIE WEIR SIMMS TRUST FOR KENNETH ALEXANDER McASHAN bearing file number 69837 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;

"(3) LILLIE WEIR SIMMS TRUST FOR ELIZABETH SIMMS McASHAN bearing file number 69838 and recorded in Book 103 of Conveyances and Donation Book 1, Cameron Parish, Louisiana;

"(4) LILLIE WEIR SIMMS TRUST FOR BENJAMIN FORD KITCHEN III, bearing file number 69834 and recorded in Book 103 of Conveyances and Donation Book 1, Cameron Parish, Louisiana;

"(5) LILLIE WEIR SIMMS TRUST FOR EDWARD SIMMS KITCHEN bearing file number 69833 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;

"(6) LILLIE WEIR SIMMS TRUST FOR ELIZABETH FRANCES KITCHEN bearing file number 69832 and recorded in Book 103 of Conveyance and Donation Book 1, Cameron Parish, Louisiana;

"(7) As to MICHAEL M. McCULLAR, who has no trust provided for him set out above, if at the time of the vesting of such properties in him he be under the age of twenty-one (21) years, then the share bequeathed to him shall pass to and become the properties of these Trustees: W. P. Hamblen, Alden X. Boddeker, Henry C. Riquelmy and Bessie Franzheim. Such trust shall be created for the same length of time as is provided in the trusts set out in the paragraphs numbered (1) through (6) above, so that the Trustees in this trust, if created, shall hold said properties in trust for such minor child in the same manner as is provided in the trusts above named. Said Trustees shall execute an in-

strument in writing recordable in the parishes in Louisiana in which my property may be situated acknowledging that they hold said property in trust, and such instruments shall set out the terms and conditions of said trusts as are set forth in those six (6) trusts above referred to.[2]

"(The trust agreements set out in Paragraphs (1) through (6) above are recorded in other parishes in Louisiana, but these references are given for the purpose of identifying the Trustees and the trust properties which shall pass in the event any of my properties shall go to any of the above named great-grandchildren under said trusts.)

"Such portion of my estate going to Trustees of any of my said great-grandchildren under this, my will, shall be held, managed and administered by said Trustees in the same manner, to the same extent, and with the same duties as are conferred in the Trust Agreements set out in Paragraphs (1) through (6) above, and shall be held by such Trustees for the same term as set forth in such Trust Agreement, whereupon said properties herein bequeathed and the accumulations shall be paid over to my great-grandchildren."

Mrs. Simms directed that no bond should be required of the five named executors of her estate,[3] "and that no action shall be had in the Court having jurisdiction of my estate relating to the settlement of the same than the probating and recording of * * my will, and the return of statutory inventory, appraisement and list of claims of said estate and of all claims due or owing by me at the time of my death." She further provided that any legatee or devisee contesting the will or seeking to interfere legally with the executors and/or trustees in their handling and disposition thereof would take nothing thereunder.[4]

Following the mandate of the testatrix, the executors probated the will in Texas on May 21, 1957, and, on June following, instituted ancillary proceedings in Plaquemines Parish in accordance with the provisions of Article 1220 of the Revised Civil

2. At the time Mrs. Simms executed her will, as well as at the time of her death, Kenneth Franzheim II had no children.
3. These are: Mrs. Bessie Franzheim, her daughter, now deceased; Kenneth Franzheim II, her grandson; W. P. Hamblen, Sr., her attorney; and Alden X. Boddeker and Henry C. Riquelmy.
4. In brief filed in this court, William P. Hamblen, Jr., son of Mrs. Simms' attorney in Texas and an executor of Mrs. Franzheim's will, questions the legality of such a provision under Louisiana law, which would prevent legal and forced heirs from asserting their rights in the successions of their relatives. He further advises it was this provision that kept Mrs. Franzheim from attacking the validity of her mother's will, not any particular desire to acquiesce in it because of a natural obligation to do so, or to validate it if invalid in law, as there was a substantial estate outside of Louisiana where the will might be valid and she would risk loss of this portion if she took adverse action in Louisiana.

Code.[5] On July 21, 1958, by ex parte judgment, Mrs. Franzheim and the trustees were placed in possession of the property, the latter with the same rights, powers, and duties as under the inter vivos and testamentary trust agreements, which were made a part of the will and judgment by reference alone. They were required to furnish no bond.

Prior to the filing of any accounting by the executors, to their turning the properties in the succession over to the trustees and heir,[6] prior to the time final settlement was made with the federal government for the inheritance and estate taxes due, and prior to the discharge of the executors, Mrs. Franzheim died testate in Houston, Texas, on December 15, 1959, leaving surviving her three children: Mrs. Elizabeth Franzheim Reese (the plaintiff here), Mrs. Lillie Franzheim McCullar, and Kenneth Franzheim II.

Her will was offered for probate in Texas, with ancillary proceedings being filed in Plaquemines Parish on January 21, 1960, by Mrs. McCullar through Louisiana attorneys, she, as heir residing in this state, seeking to be appointed administratrix since the three executors named in the will[7] were unable to qualify because the validity thereof was under attack in Texas.[8] In this petition she alleged that Mrs. Franzheim "left as her sole and only children and forced heirs," the three named in the preceding paragraph, including the plaintiff. Her brother, Kenneth Franzheim II, as one of the named executors, joined her in the petition, expressing a willingness to serve as executor once the "restraints of the law" were removed. Mrs. Reese opposed her sister's appointment, and it was not until November 2, 1961, when it became necessary for someone to act in connection with the renewal and extension of the mort-

5. This was the controlling provision when the succession was opened, as well as laws enacted implementing it, as the effective date of the new Code of Civil Procedure, adopted in 1960, was January 1, 1961.

6. In stipulation of fact drawn May 31, 1963, it is stated: " * * * the trustees under the testamentary trusts * * * have neither received nor disbursed any funds and have established no records of accounts."

7. These are: Kenneth Franzheim II, W. B. Hamblen, Jr., and Alden X. Boddeker. Mr. Boddeker does not appear in this case in this capacity, only as an executor under the Simms will.

8. This was attacked on a technicality only, i. e., that the witnesses were not informed they were witnessing the signing of a will.

Following trial, the will was probated on February 20, 1962, but an appeal followed, which was sustained on July 9, 1964, with rehearing denied August 6, 1964. See, Reese v. Franzheim, Tex.Civ.App., 381 S.W.2d 329. The executors were issued letters testamentary October 27, 1964, in Texas. The will was probated in the ancillary proceedings in Louisiana on December 23, 1964, and the executors appointed on that day by the district court. Mrs. McCullar's provisional appointment terminated when they qualified on December 28, 1964, and they were substituted as parties in the appellate court in her stead on January 20, 1965, shortly after the appellate court decision, which was rendered on January 11, 1965. See, La. App., 175 So.2d 113.

gage note executed in connection with securing funds to pay inheritance taxes in the Simms succession, that Mrs. McCullar's appointment was approved. However, her appointment was as provisional administratrix only.

Thereafter, Mrs. Reese, as a daughter and forced heir of Mrs. Franzheim, instituted the instant action in Plaquemines Parish in the Simms succession under the provisions of Article 2931 of the Code of Civil Procedure,[9] contending Article XIX of the will of her grandmother, under which the trusts were sought to be established and the remainder of the Louisiana property placed therein under the conditions set forth, contains substitutions prohibited under the laws of Louisiana, and the will, to this extent, is invalid, as is also the portion of the ex parte judgment rendered July 21, 1958, placing the heir and trustees in possession of this property. She sought judgment (1) annulling the will and judgment of possession provisions violative of law; (2) recognizing her as a forced heir of her mother, and, as such, entitled to ⅓ of all of her property in Louisiana; and (3) for an accounting from all parties receiving any portion of this property.

As defendants she joined the following parties: (1) Kenneth Franzheim II, individually as a beneficiary of one of the testamentary trusts, and in his capacity as executor and trustee under the Simms will; (2) Mrs. Lillie Franzheim McCullar, individually as a beneficiary under the testamentary trust, in her capacity as natural tutrix of her minor children, and as provisional administratrix of her mother's succession; (3) the seven minor children of Mrs. McCullar and the plaintiff as beneficiaries under secondary testamentary trusts, through their legal representatives;[10] and Alden X. Boddeker, Henry Riquelmy, and W. P. Hamblen, Sr., as executors and trustees under the Simms will.

All of the defendants [11] excepted to the court's jurisdiction rationae personae and materiae, predicated on the contention they were nonresidents of Louisiana [12] and were then *functus officio* because the succession matter terminated with the rendition of the judgment of possession. They also excepted to the court's venue "in respect to the real estate, royalties, oil, gas and other mineral rights or leases bearing upon lands or properties located outside of Plaquemines Parish," including in particu-

---

9. *Since these codal provisions were effective from January 1, 1961, this was the controlling law at the time the suit was filed.*

10. These are: (1) The four children of Mrs. McCullar, three issue of her marriage to Samuel A. McAshan and one issue of her marriage to Myrlin McCullar, and

(b) the three children of Mrs. Reese, issue of her marriage to Dr. Benjamin F. Kitchen, Jr.

11. It does not appear exceptions were filed on behalf of the Kitchen minors.

12. Mrs. McCullar, as a resident of New Orleans, did not except to the petition rationae personae in any capacity.

lar the St. Martin Parish property and that covered by State Lease No. 194.[13]

In a well considered opinion the trial judge correctly disposed of all of these exceptions, holding: (1) The court had jurisdiction rationae personae as the succession proceeding did not terminate with the rendition of the judgment of possession, numerous steps having to be taken thereafter by the executors in furtherance of their duties as such; in addition, that they had sufficient contact with the court to be subject to its jurisdiction under Article 6 of the Code of Civil Procedure in the light of the holding in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (see, also, Morrison v. Hew Hampshire Co., No. 48,077 on our docket, handed down June 6, 1966, 249 La. 546, 187 So.2d 729); (2) it had jurisdiction rationae materiae for the purpose of determining the validity of the will probated in the prior succession proceedings in the same court, citing Articles 45, 81, 2006, and 2931 of the Code of Civil Procedure; (3) the court had venue under Articles 2006 and 2931, and also under Article 80, inasmuch as the property extended into a number of parishes and suit could be brought in any one where the property was located; and, finally, (4) mineral and royalty rights affecting land and property in Louisiana are classified as real and immovable incorporeals under the law and jurisprudence of Louisiana, and, as such, are subject to Louisiana laws of descent and distribution.

After these exceptions had been overruled, all defendants answered, denying generally the allegations of the petition, and particularly that the trust provisions of the will were invalid under Louisiana law or contrary to its public policy. For the first time they took the position the plaintiff was without right to attack the validity of these trusts and the judgment of possession since she was not an heir under the will and possessed no greater rights in the Simms estate than did her mother, who, during her lifetime and by her actions ratified these provisions, and, if living, would be estopped to now assert their invalidity.

The case was heard on the merits under a stipulation of facts concurred in by all counsel and parties, to which was attached (1) a copy of all of the inter vivos trust agreements executed by Mrs. Simms in 1954, which had been made a part of the will by reference only; (2) all documents through which Mrs. Simms deraigned her title to the succession property in Louisiana; (3) documents dealing with the payment of taxes by the estate, including the note and mortgage executed in favor of a Texas bank as security for the money ad-

---

13. Although there is no such indication in the exceptions, in his reasons the trial judge states it was also apparently urged the court had no jurisdiction whatsoever with respect to the property (not merely the part lying outside Plaquemines Parish), as they were movables controlled by Texas law.

vanced for this purpose; and (4) the ancillary proceedings for the probate of the will in the Succession of Franzheim.[14]

The trial judge, on February 14, 1964, rendered judgment with carefully delineated written reasons in which he recognized Mrs. Reese to be a forced heir of her mother, and decreed the nullity of Article XIX of the Simms will and the ex parte judgment placing Mrs. Franzheim and the trustees in possession of the Louisiana property.

From this judgment Kenneth Franzheim II specifically refrained from appealing individually as a testamentary trust beneficiary under his grandmother's will, as did Mrs. McCullar, who, additionally, refrained from appealing as the provisional administratrix of the will of her mother. Kenneth Franzheim II appealed only as an executor under his grandmother's will and as a trustee of the several trusts for the benefit of the minors and of his sister thereunder. The latter limited her appeal to her capacity as natural tutrix of her minor children.

The judgment of the district court was affirmed by the Court of Appeal for the Fourth Circuit in a well considered unanimous opinion handed down January 11, 1965, wherein all of the issues—including those raised by way of exceptions, and particularly the exception of no right of action

and estoppel as set out in the answers—were clearly stated and solved according to the applicable laws of Louisiana, the court concluding Article XIX of Mrs. Simms' will constituted substitutions prohibited by Section 16 of Article IV of the Constitution of Louisiana and Article 1520 of the Revised Civil Code and the jurisprudence thereunder, and, accordingly, that the ex parte judgment rendered pursuant thereto was null and of no effect. See, La.App., 175 So.2d 113.

Following this, the executors named in Mrs. Franzheim's will, who had by court order and judgment rendered in the district court December 23, 1964, been appointed to administer her succession, were substituted as parties in the appellate court on January 20, 1965, in lieu of Mrs. McCullar, whose appointment as provisional administratrix of this succession terminated when these executors qualified on December 28, 1964.

For a review of the appellate court judgment, writs of certiorari were granted by us on the applications of: (1) Alden X. Boddeker and Henry C. Riquelmy, as executors and trustees under the Simms will (No. 47,706); (2) the Kitchen minors (No. 47,707); (3) the minor children of Mrs. McCullar and also W. P. Hamblen, Sr., as an executor and trustee under the Simms will (No. 47,712); and (4) Dr. Benjamin

14. Although in her petition Mrs. McCullar alleged Mrs. Reese was a forced heir of their mother, judgment was not rendered recognizing her as such until December 23, 1964. See Footnote No. 7.

F. Kitchen, Jr., as tutor of his minor son Benjamin (No. 47,713.) [15]

In these applications the parties now collectively complain the Court of Appeal erred in holding: (1) The trial court had venue of the action and also jurisdiction rationae personae and materiae; (2) overriding royalties created in 1935 and 1936 out of mineral leases granted in 1928, prior to the legislative characterization of such rights,[16] are real and/or incorporeal immovables, the descent and distribution of which is controlled by Louisiana law; (3) Mrs. Reese inherited from her mother the right to attack the testamentary trusts despite her mother's construction as to their validity and her acquiescence therein;[17] and (4) Article XIX of the will placing the remainder of the Louisiana property in the trusts contains prohibited substitutions null and void under the laws of Louisiana and violative of the public policy of the state. In Dr. Kitchen's application counsel urge, fur-

ther, the action of the court in invalidating the trust provisions by application of Louisiana law abridges the equal protection guarantees of Section 1 of the Fourteenth Amendment to the Constitution of the United States, and also the privileges and immunities provisions to be found in Section 2 of Article IV of this constitution.

Although still pressing the exceptions decided adversely in the lower courts, two of the executors under the Simms will—Messrs. Boddeker and Riquelmy—who sought a writ here, obviously realized it was unlikely this court would reverse these judgments based on our prior jurisprudence, particularly in the face of the positive reprobation of prohibited substitutions in the constitution and the civil code; they therefore filed in this court another exception—termed "peremptory"—of no right of action on the part of Mrs. Reese to attack the validity of Article XIX of the will

15. Kenneth Franzheim II had appealed to the Court of Appeal as trustee and executor under the Simms will. However, he sought no rehearing of the judgment there rendered and did not apply for a writ to this court in this capacity.

16. Act 205 of 1938 (R.S. 9:1105).

17. W. P. Hamblen, Jr. who is apparently associated in the practice of law in Texas with his father, Mrs. Simms' attorney, as an executor under the will of Mrs. Franzheim, the only and forced heir of Mrs. Simms, neither supported nor opposed the action of other defendants in seeking writs; he did, however, file a memorandum here asserting not only Mrs. Franzheim but Messrs. Boddeker

and Riquelmy were informed by counsel there were legal problems connected with the testamentary trusts in the Simms will under Louisiana law, and Mrs. Franzheim's action in securing the ex parte judgment in 1958 was prompted by her apprehension she would risk loss of the portion of her mother's estate outside Louisiana, as pointed out in Footnote No. 4; consequently, that the statements in the writ filed by these executors to the effect Mrs. Franzheim by this action validated absolutely invalid will provisions and rendered them unassailable, as well as evidenced her opinion that the trusts were legal, and that of her counsel, are "unsound and not factually correct."

and the judgment of possession in so far as pertinent thereto.

This exception was sustained on original hearing, without consideration of the other exceptions or the merits of the case, and the suit dismissed.

Mrs. Reese timely filed an application for a rehearing, and, in his capacity as an executor under both the Simms and Franzheim wills, so did her brother, Kenneth Franzheim II. Both seek a reversal of our original judgment and pray that a decision be rendered on the merits.

In his capacity as executor under the will of Mrs. Simms, Kenneth Franzheim II asserts in brief in support of his request for a rehearing: "It is difficult to understand why Messrs. Boddeker and Riquelmy, as two of the four executors of the Succession of Mrs. Simms, filed in this court, at the late date of September 28, 1965, the exception of no right of action and of lack of interest in the plaintiff. The facts and the law upon which Messrs. Boddeker and Riquelmy base this exception were well known to them when these proceedings were instituted on November 27, 1961. Nonetheless, Messrs. Boddeker and Riquelmy did not, at the outset of this litigation elect to question the claimed want of capacity of Mrs. Reese but elected, on the contrary, to litigate with her as though she possessed such capacity, and it was only after Messrs. Boddeker and Riquelmy were unsuccessful in two courts that they then elected to ques-

tion her capacity, apparently in the hope that they could defer the day of reckoning by the belated use of this bit of legal advocacy." Mr. Franzheim further points out that the effect of our original decision is to leave this estate in the hands of executors for another long and indefinite period with unbridled power over its disposition, and who are required to make no accounting under the very terms of the will and have already had their bond cancelled.

In his capacity as executor under the Franzheim will, Kenneth Franzheim II urgently pleads that "justice cries out for a determination" of the merits of the case, thereby obviating the necessity of "subjecting the parties * * * to further expense and protracted litigation that must arrive ultimately at the same point at which the parties have now arrived in this present litigation," observing the case has already been in the court since November 1961 and the Code of Civil Procedure expressly provides "the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal" (Article 2164), and, further, that once this court granted the writ, it has "the same power and authority in the case as if it had been carried directly by appeal." Section 11 of Article VII of the Constitution of 1921. He stresses that inasmuch as all parties at interest are now properly before the court, including the executors who were held on our original hearing to have had the seizin

necessary to maintain such an action, the case should not be "shunted aside" on the technicality purportedly found in the magic word of *seizin*, and thus leave title to the remainder of the Louisiana property in an uncertain and unmerchantable status in view of the two lower court judgments that stand upon the public records condemnatory of the trust provisions of the will, the added expense attendant upon further litigation falling ultimately on the heirs if the matter is not decided on the merits now.[18]

Careful consideration of the exceptions filed in limine reveal both the lower and appellate courts correctly overruled these for the reasons hereinabove set out, and no useful purpose can be served by burdening this already lengthy opinion by reiterating these here in the main. However, as to the characterization of the leasehold and over-riding royalty rights in the Simms estate as movables controlled by Texas law is concerned,[19] as urged under the exception rationae materiae, we deem this sufficiently vital and important to treat this phase of the case more fully in affirming the rulings of the lower courts in this respect.[20]

These rights, which arise principally under lease contracts affecting immovable property in Louisiana that were granted by the state in 1928 to Mrs. Simms' ancestor in title, are controlled by the pertinent portions of the following articles of the Revised Civil Code of 1870:

> another State of the Union * * * disposes by will or testament * * * of his *movable* property situated in this State, if at the time of making said will * * * or any other act causa mortis, and at the time of his death, he resides and is domiciliated out of this State." Article 10 of the Revised Civil Code. (The emphasis has been supplied.)

18. As an example of some of the difficulties encountered by reason of the failure of the court to pass on the merits, Kenneth Franzheim II points out in application that because the Franzheim estate was increased three-fold under the lower court judgment invalidating the trust provisions, the federal government levied in excess of $600,000 and the state in excess of $200,000 additional estate taxes, and it cannot be determined whether these amounts were legally paid or are subject to refund until the validity of the trust provisions is finally passed on by this court.

19. "The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed. *But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.* The exception made in the second paragraph [the underscored portion] of this article does not hold, when a citizen of

20. In amicus curiae brief the Attorney General of Louisiana points out that if these rights are characterized as movables, this will have the effect of removing this property from the state's control and placing it in the hands of non-resident trustees not amenable to Louisiana law, not only permitting states from whose soil the properties were not taken to tax them, particularly for inheritance purposes, but require Louisiana "to look to strange and foreign laws to determine questions of ownership with respect to" valuable leasehold rights and overriding royalties affecting real and/or immovable property in our state.

"*There are things immovable* by their nature, others by their destination, and others *by the object to which they are applied.*" Article 463.

"*Incorporeal things, consisting only of a right,* are not of themselves susceptible of the quality of movables or immovables; nevertheless they *are placed in one or the other of these classes, according to the object to which they apply* and the rules hereinafter established." Article 470.

"When obligations are attached to immovable property, they * * * are called real obligations" (Article 2010), which "may be created * * * By alienating * * * some real right to be exercised upon it." These contracts give rise to obligations that are purely real. The owner of the land is not liable therefor, "*but the real property is.*" Article 2012.

"Not only servitudes, but *leases* and all other rights, *which the owner has imposed on his land* * * * *form real obligations* which accompany it in the hands of the person who acquires it * * *." Article 2015. (The emphasis throughout has been supplied.)

This was the law in 1928 when the state granted its State Leases Nos. 192, 194, and 195, wherein it gave the lessor the right to go upon state-owned waterbottoms and land for the purpose of extracting from its soil such minerals as might be found thereunder, reducing these to possession for sale or personal use. It was also the law in 1935 and 1936 when the ancestor in title of Mrs. Simms assigned this right to others under condition that it, its heirs, or assigns retained the right to a portion of the minerals recovered from the soil, or the value thereof, as well as certain reversionary rights under the original contracts. And it was the law in 1957 when Mrs. Simms died in Texas, and also when the executors under her will instituted ancillary proceedings in Plaquemines Parish for the purpose of bringing her leasehold and overriding royalty interests in these leases into the mass of her succession for distribution according to law, stating in the petition that *Mrs. Simms "owned an interest in immovable property situated within the State of Louisiana and in several Parishes in said State,* the greater portion of which in value was situated within the Parish of Plaquemines," and listing on the statement of estate taxes due Louisiana *all of the property in this state as "REAL ESTATE."* (The emphasis has been supplied.)

The cases of Gulf Refining Company v. Glassel, 186 La. 190, 171 So. 846, and Regan v. Murphy, 235 La. 529, 105 So.2d 210, relied on by relators, are clearly inapposite from a factual and legal standpoint. While they may derive comfort from some language used in these cases, the former is only authority for the proposition that under the law and jurisprudence of this state a lessee was without right to institute a petitory

or possessory action without the concurrence and/or consent of the landowner-lessor. When the legislature next met following this decision, it adopted its Act 205 of 1938, specifically granting such right to a mineral lessee. [21] And the Regan case is only authority for the proposition that the rights granted mineral lessees in the 1938 act, as amended by Act 6 of the Second Extra Session of 1950, did not render mineral leases amenable to the liberative prescription of ten years under either Article 3529 or 3546 of the Revised Civil Code.

These statutes and the jurisprudence thereunder did not have the effect of overruling the above quoted codal provisions which place incorporeal things, consisting only of rights that are not "of themselves strictly susceptible of the quality of movables or immovables," such as leases, in one classification or the other, according to the object to which it applies. Thus a contract leasing a movable is, under the code, classified as a movable, whereas a contract leasing an immovable is classified as an immovable. In the latter case, the real property is, itself, liable for the obligation. It is for this reason that all contracts and donations affecting realty must be, as is required for the transfer of real property, in writing and recorded in the parish where the immovable to which they apply is situated to be legally effective. Hackenburg v. Gartskamp, 30 La.Ann. 898; Perrault v.

Perrault, 32 La.Ann. 635; Hanby v. Texas Co., 140 La. 189, 72 So. 933; Scurto v. Le Blanc, 191 La. 136, 184 So. 567; Ingolia v. Lobrano, 244 La. 241, 152 So.2d 7; and Hayes v. Muller, 245 La. 356, 158 So.2d 191.

To hold otherwise would not only call for us to overrule and wipe from the code all of the above quoted articles and the jurisprudence thereunder, but would also be unthinkable, since, as pointed out in the appellate court decision, "the State of Louisiana, in order to maintain the integrity of its public records system, should not be forced to look, in either its sovereign or proprietary capacity, to the laws, decisions, or proceedings of another state in order to determine the ownership or possession of its own mineral rights." And, as the Attorney General so well·puts it in his brief amicus curiae, this would permit a foreign state to levy inheritance taxes upon the disposition of these interests at death,—long prior to the date at which they are to be severed from our soil, and which, until that moment, remain the state's most valuable property.

We now pass to the exception of no right of action filed in this court after these writs were granted. The basis for this exception is not to be found in the instrument itself, but we gather from argument it is that Mrs. Reese is a stranger to her grandmother's estate as she is not an heir· thereto since her mother was living at the time Mrs.

21. R.S. 9:1105, as amended by Act 6 of the Second Extra Session of 1950.

Simms died, and, inasmuch as her mother died testate, leaving a will in which she placed seizin of her estate in named executors, *seizin* did not and could not devolve upon Mrs. Reese as a forced heir by operation of law.

This exception is clearly without merit. Counsel overlook the fact that even though Mrs. Franzheim in her will gave the testamentary executors seizin of her estate, under Louisiana law controlling at the time *"this seizin can not continue beyond a year and a day from the decease of the testator,* if he died in the State, *or from the day on which his death was first known, if he died out of the State"* (Article 1659 of the Revised Civil Code),[22] their duties thereafter being limited to seeing that the estate is finally wound up and the testament faithfully executed (Articles 1673 and 1672 respectively); furthermore, that *"The heirs can, at any time, take the seizin from the testamentary executor,* on offering him a sum sufficient to pay the movable legacies and on complying with the requirements of article 1012." Article 1671.[22] (The emphasis has been supplied.)

Counsel have also overlooked the many other pertinent provisions to be found in Book III of the Revised Civil Code dealing with the different modes of acquiring the ownership of things, and particularly the titles thereunder controlling successions, among which are the following:

"Succession is the *transmission of the rights* and obligations *of the deceased to the heirs."* Article 871.

*"The person who has become the * * * successor of the deceased * * * is called the heir,* no matter whether he be such by law, by the institution of a testament or otherwise." Article 884.

"If there is no testament or institution of heir, or *if the institution is null or without effect, the succession is then open in favor of the legitimate heirs, by the mere operation of law."* Article 886.

*"Legitimate children * * * inherit from their father and mother * * * in equal portions and by heads * * * by their own right * * *."* Article 902.

*"A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased*

---

22. Although these articles were repealed by Act 30 of 1960 (Code of Civil Procedure), the effective date thereof was January 1, 1961, which was subsequent to the date on which the rights here involved vested in the plaintiff; consequently, the provisions of Articles 1659 and 1671 control the determination of this issue. According to the explanatory note under Article 1659 showing this repeal, it is stated the doctrine of seizin is discarded under the new code. However, under this code the heir of either a testate or intestate succession can secure possession of all or part of the succession at any time prior to the homologation of the tableau of the final distribution by following the procedure therein set out. See, Articles 3362 and 3372.

*person to whom he succeeds.* This rule applies also to testamentary heirs, to instituted heirs and universal legatees. * * *" Article 940. See, also Article 1607.

"*The right mentioned in the preceding article is acquired by the heir by the operation of law alone, before he has taken any step to put himself in possession, or has* expressed any will to accept it * * *" Article 941. See, also, 1607.

"The heir being considered as having succeeded to the deceased from the instant of his death, *the first effect of this right is that the heir transmits the succession to his own heirs * * *.*" Article 944.

"*The second effect of this right is to authorize the heir to institute all the actions* * * * *which the deceased had a right to institute * * *.*" For the heir, in everything, represents the deceased, *and is of full right in his place* as well *for his rights* as for his obligations." Article 945. (The emphasis throughout has been supplied.)[23]

■ From the foregoing it is obvious that Mrs. Reese became seized of all the rights of her mother at the moment of her mothers death, one being the right to institute "all the actions" which Mrs. Franzheim "had the right to institute," including the suit to establish that Article XIX of the Simms will contained prohibited substitutions which, being in derogation "of laws made for the preservation of public order or good morals,"[24] are absolutely and irremediably null,[25] completely insusceptible of ratification by acquiescence, convention, or estoppel,[26] with the result that, to this extent, her grandmother died intestate.[27]

We now pass to the merits of the case.

■ In order to solve the problems posed with respect to the validity of the purported trusts sought to be established by

23. The provisions of all of these articles are the same today; none were affected by the Code of Civil Procedure effective from January 1, 1961.

24. Article 11 of the Revised Civil Code provides: "*Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals. * * *"* See, also, Article 2031, which provides, in part: "*Every condition * * * prohibited by law, is null, and renders void the agreement which depends on it.*" (The emphasis has been supplied.)

25. Article 12 of the Revised Civil Code Provides: "*Whatever is done in contravention of a prohibitory law, is void,* although the nullity be not formally directed." (The emphasis has been supplied.)

26. Articles 11, 12, and 2031 of the code, as quoted in full in Footnotes Nos. 24 and 25. See, also, Hoggatt v. Gibbs, 12 La.Ann. 770 and 15 La.Ann. 700; Succession of LeBlanc, 128 La. 1055, 55 So. 672; Whitney National Bank of New Orleans v. Schwob, 203 La. 175, 13 So. 2d 782; and Fried v. Bradley, 219 La. 59, 52 So.2d 247.

27. Article 1096 of the Revised Civil Code provides: "*A succession is called intestate when* the deceased has left no will, or when *his will has been revoked or annulled * * *.*" (The emphasis has been supplied.)

Mrs. Simms in Article XIX of her will, we must look to the applicable law in effect at the time of the death of Mrs. Simms and that of her daughter, Mrs. Franzheim, as, unquestionably, the rights of this daughter and those of her heirs were fixed and vested at the time of their respective deaths, i. e., May 1, 1957, and December 15, 1959. First Congregational Church v. Henderson, 4 Rob. 209; Succession of Marion, 163 La. 734, 111 So. 667; Pires v. Youree, 170 La. 986, 129 So. 552; Succession of Manning, 185 La. 894, 171 So. 68; and Succession of Forstner, 186 La. 577, 173 So. 111. Consequently, the subsequent amendment to the constitution and the acts of the legislature adopted pursuant thereto [28] can have no effect whatsoever on these vested rights,[29] Section 16 of Article IV of the Constitution of 1921, as amended in 1952, being the provision controlling here.[28] The pertinent portion of this section provides:

"No law shall be passed abolishing forced heirship * * *. *No law shall be passed authorizing the creation of substitutions, fidei commissa or trust estates*; except that the legislature *may* authorize the creation of *trust estates* for a period not exceeding ten years from the settlor's death as to a beneficiary which is not a natural person; ten years from the settlor's death as to a beneficiary who is a natural person or until the death of the beneficiary whichever is the longer period. * * *." (The emphasis has been supplied.)

This constitutional provision is but a reiteration of the absolute prohibition against substitutions and fidei commissa that has existed since Louisiana became a state, and which is codified in Article 1520 of the Revised Civil Code, the pertinent portion of which provides: *"Substitutions and fidei commissa are and remain prohibited. Every disposition by which the donee,* the heir or *legatee is charged to preserve for or* [30] *to return a thing to a third person is null,* even with regard to the donee, the instituted heir or the legatee." (The emphasis has been supplied.)

In Succession of Reilly, 136 La. 347, 67 So. 27, with the late Chief Justice Charles A. O'Niell as the author of the opinion, the court gives a short, but full and complete, crystallization of the jurisprudence of this state on prohibited substitutions and fidei

28. Article IV, Section 16 of the constitution was amended in 1958 (Act 548) and 1962 (Act 521). The 1958 changes dealt with rights of adoptive children, not pertinent here. The implementing act under the 1962 constitutional amendment is Act 44 of 1962, commonly known as the Trust Code.

29. Section 15 of Article IV of the Constitution of 1921 provides: "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; *nor shall vested rights be divested* * * *." (The emphasis is supplied.)

30. The editors of the Louisiana Legal Archives advise that the word "or" as used in this article should have been translated "and."

commissa as reprobated in these constitutional and codal provisions, pointing out:

"In more than a century of jurisprudence on the subject of substitutions and fidei commissa, prohibited by article 1520 of the Civil Code, the distinction between them and the difference in their effect has been consistently observed. The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it, only the charge or direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. *A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee.* If permitted, the effect of a substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither he nor the person designated to receive the title at the donee's death could

alienate it." (The emphasis has been supplied.)

In the same opinion the author observed: "A substitution is necessarily a fidei commissum, but a fidei commissum is not necessarily a substitution. In the fidei commissum the title is not tied up or kept out of commerce; the direction or charge, as to its disposition, is to be regarded only as a precatory suggestion addressed to the conscience of the donee or legatee, which, being illegal, but harmless, can have no binding effect, and may be legally regarded as not written."

In subsequent cases treating of substitutions and fidei commissa, this language has been frequently quoted with approval. And, in a later case dealing with this subject, with Chief Justice O'Niell again the author of the opinion, the court held: *"A bequest of property to one legatee* with the stipulation that on the condition that at his death and *without any act of conveyance from him it shall belong to another legatee named in the will is a prohibited substitution."* Succession of Heft, 163 La. 467, 112 So. 301. (The emphasis has been supplied.)

 It is obvious, therefore, that a prohibited substitution exists when a testator places the title of the property bequeathed in a first named legatee (referred to as the instituted heir) at his death, and directs that, at the end of a specified period, usually but not necessarily at the death of the

instituted legatee, this title is to be turned over, transmitted, or passed to a second legatee (referred to as the substitute heir), with the result that both parties take their title directly from the testator, the title of the institute being one that he cannot alienate because of the charge that he is to transmit it to the substitute at some time in the future and the title of the substitute being one that the substitute cannot alienate because it does not exist until some date in the future when the property is to eventually "vest" in him. Marshall v. Pearce, 34 La. Ann. 557. In thus indicating a desire to give the property away "twice" to two named legatees, the testator, as pointed out in Succession of Reilly, supra, not only makes his own will, but attempts also to make the will of the instituted legatee, thus endeavoring to determine the law of successions by substituting "his own will * * for the legal order of succession from his donee or legatee."

■ It is to check the power of a testator to thus control the descent and distribution of his property after title has vested in the first legatee upon his death, in contravention of the laws establishing the order of inheritance, as well as to prevent restraints upon the alienation of property, that the law, *as a penalty, strikes down the entire disposition,* the second paragraph of Article 1520 clearly providing that "Every disposition by which the donee, the heir, or the legatee is charged to preserve for or return a thing to a third person *is null even with regard to the donee, the instituted heir, or the legatee.*" As pointed out in Succession of Johnson, 223 La. 1058, 67 So.2d 591, "*in cases of prohibited substitutions the whole will is stricken with nullity* whereas in cases of fidei commissa, it is only those dispositions which are tainted with that designation that are invalid," the vital distinction being whether the instituted legatee has under the bequest the authority to alienate the title placed in him. See, Marshall v. Pearce, supra. (The emphasis has been supplied.)

It must be remembered that under the law in existence at the time of the death of Mrs. Simms, and that of her daughter, Mrs. Franzheim, *the only exceptions* to the reprobations against the disposition of property under Article 1520 of the Revised Civil Code pertinent here [31] were to be found in (1) Article 1522, which permits a testator to separate the usufruct from the ownership by making a disposition in which "the usufruct is given to one, and the naked ownership to another," and (2) the trust estate law passed pursuant to Section 16 of Article IV of the constitution, which permits a testator to separate a beneficial interest from the ownership for a limited

31. In Article 1521 it is specifically stated that a disposition whereby a third person is called to take the legacy in the event the original legatee does not take it, is not a substitution.

period,[32] the distinction between this and the usufruct under Article 1522 being that a trustee, not the beneficiary, administers the property during this period.

The legislature, in authorizing the creation of private testamentary trusts under this constitutional mandate, has always done so within the specific guide lines laid down therein, as amended from time to time, and from the time of the adoption of the first legislation on this subject following the constitutional authorization (Act 81 of 1938)[33] this court, seeking to give full effect to the intention of the testator in every will containing a trust has been careful to maintain those that could be brought within these limitations if possible, but striking down those that did not comply with these provisions.

Despite criticism levelled by some legal writers at the decisions in Succession of Guillory, 232 La. 213, 94 So.2d 38, rendered by this court, and in Succession of Meadors, 135 So.2d 679, rendered by the Court of Appeal for the Second Circuit, certiorari denied by us, based on *the fear* that these decisions evidence an attitude on the part of the court to consider all trusts as containing prohibited substitutions, a mere reading of these decisions will readily disclose each involved wills in which the testator first bequeathed the property to named trustees to hold until the death of the beneficiaries, when the second bequest of the property to a third person and/or institution would take place. In other words, title to the property did not vest in the principal legatees until the trusts terminated, at which time there was a second transfer —a second vesting—of title, referred to by one writer as the "hallmark of the prohibited substitution." Since there was no vesting of the property in the principal legatee at the testator's death, only *in futuro,* the fact that it was stipulated in the will the property was bequeathed to the trustee "in trust" contained on magic formula to cure this obvious substitution.[34]

32. "Usufruct is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce * * *." (Article 533), whereas the one to whom beneficial interests are given under the provisions of the trust estate law has only such as are stipulated by the settlor. "The right of the usufruct expires at the death of the usufructuary" (Article 606), whereas the beneficial interests go to the beneficiary during the period stipulated by the settlor only, provided this is within the period permitted by the law. The usu-fructuary controls and administers the property, whereas the beneficiary does not, this being the function of the trustee under the trust estate law.

33. Although Louisiana first authorized private testamentary trusts by Act 107 of 1920, this was adopted prior to the 1921 constitution. The 1920 act was specifically repealed by Act 7 of the Third Extra Session of 1935. The controlling legislation here is Act 81 of 1938.

34. Since the Guillory will contained such an obvious substitution, it is difficult for the author of the instant opinion (who also wrote the opinion in the Guillory

Had the trust estate law been interpreted as permitting such a disposition, then it would have been unconstitutional, for Section 16 of Article IV of the constitution provides "No law shall be passed authorizing the creation of substitutions," and a substitution is a "disposition by which the donee, the heir, or legatee is charged to preserve for or return a thing to a third person." Article 1520. To have made a valid disposition in compliance with existing law in the Guillory and Meadors cases, the testator should have left the property at death to the one intended as the principal legatee, subject to the conditions of the trust for the beneficiary under the administration of the trustee.

The will in the instant case readily discloses Article XIX is in direct contravention of Section 16 of Article IV of the constitution, as amended through 1952; the trust estate law of 1938, as incorporated with amendments in the Revised Statutes of 1950, Articles 9:1791–2212; and Article 1520 of the Revised Civil Code, our basic and statutory law in effect at the time the Simms will was executed, and also at the time Mrs. Simms died in 1957, as well as the jurisprudence thereunder.

■ In Paragraph (A) of Article XIX of her will, Mrs. Simms did "give, devise and bequeath" (vest title) half of the remainder of her property in this state "to Bessie Franzheim, Kenneth Franzheim II, Alden X. Boddeker, Henry C. Riquelmy and W. P. Hamblen and their successors," trustees under the testamentary trust established for Mrs. McCullar (the devise and bequest of the other half in Paragraph (B) being by identical language to the named trustees of the testamentary trust for Mr. Franzheim), to "be held by them" "during the natural life of my * * * granddaughter," and at her death, the property was then to vest in her great-grandchildren in the designated proportions. This unquestionably constitutes a substitution prohibited by law, as the title to the property was not to vest in the great-grandchildren when Mrs. Simms died, but instead, in futuro, at the time the grandchildren died, called by the appellate court in its decision "a classic example of a substitution reprobated by Louisiana law." There can be no other conclusion from the plain language of this disposition but that Mrs. Simms bequeathed the remainder of her Louisiana properties to the trustees of Mrs. McCullar and Mr. Franzheim to hold until the deaths of these grandchildren, at which time the properties were to vest in the great-grandchildren. This brings the disposition squarely within the definition

case) to understand how able counsel can find solace in some of the criticisms touching thereon. Having reached the primary conclusion this was a prohibited

substitution pure and simple, it was unnecessary to consider other grounds on which the bequest might also have been invalid.

set out in the second paragraph of Article 1520. (The emphasis has been supplied.)

Moreover, Mrs. Simms attempted in Article XIX to reach her hand beyond the grave to direct the descent and distribution of the remainder of her Louisiana property to and through this third generation, for she provided that title to these properties which vested in the great-grandchildren at the death of Mrs. McCullar and Mr. Franzheim would, if at that time the child was under 21, pass to and become the properties of the trustees of the child under the successive secondary trusts she also created in the will, the property, after passing to these trustees, not to be retransferred to these great-grandchildren until these secondary trusts terminated.

The provisions of Paragraph (C) of Article XIX make this very clear, and Paragraphs (A) and (E) specifically provide that *title is only to vest in the great-grandchildren "subject to the provisions of Paragraph (C)."* These provisions are: "In the event that *at the time of the vesting of such properties in my said great-grandchildren,* any of *my said great-grandchildren* named herein *should be under the age of twenty-one* (21) years, *then* and in that event *the properties * * * shall pass to and become the properties of the Trustees of such great-grandchildren under the trusts* which I have heretofore created and *which I now create."* (The emphasis has been supplied.)

In the first place, it is apt to observe here that many of the conditions under which the grandchildren and great-grandchildren are to succeed to the interests bequeathed them in the will are contained in the inter vivos trusts established by Mrs. Simms in 1954, and which she makes a part of her will by reference only, although they are intended to affect and relate to the disposition mortis causa of the property. Under the jurisprudence of this state *this invalidated the entire will.* Succession of Ledet, 170 La. 449, 128 So. 273; and Hessmer v. Edenborn, 196 La. 575, 199 So. 647. As stated in the latter case, with the late Justice Odom as the organ of the court: *" * * * where a testator refers to another writing for the purpose of manifesting the substance of his wish or desire, and where that wish cannot be ascertained without referring to such writing, then the testament * * * is invalid."* (The emphasis has been supplied.)

We are not unmindful of the fact that under the provisions of Articles 10, 491, and 1596 of the Revised Civil Code testaments are effective in this state where, as stated in the latter article, they are "clothed with all *the formalities* prescribed for the validity of wills" where they were executed. But these articles have reference to matters of form that neither affect nor relate to the disposition of the property. In any event, and without resort to the documents which Mrs. Simms sought to incor-

porate in her will by reference alone, it is clear that Article XIX in itself contains a prohibited substitution pure and simple.

In argument, orally and in brief, counsel representing the relators contend Article XIX contains no prohibited substitution, but, instead, that the Louisiana property vested immediately in the great-grandchildren at the death of Mrs. Simms, with Mrs. McCullar and Mr. Franzheim "income beneficiaries" having rights in the nature of a species of usufruct. Counsel are in error.

In the first place, as just demonstrated, Mrs. Simms did not vest the property at her death in the great-grandchildren. Secondly, it is obvious that under the disposition in Article XIX neither Mrs. McCullar nor Mr. Franzheim were "income beneficiaries" as that term is defined in R.S. 9:1792(5), for that section of the trust estate law defines an income beneficiary as "the beneficiary to whom *income is presently or currently payable, or for whom it is accumulated,* or *who is entitled to the beneficial use of the principal presently and for a time prior to its distribution.*" Under the provisions of Article XIX no income from the Louisiana property is presently or currently payable to Mrs. McCullar or Mr. Franzheim, and none is being accumulated for them. Indeed, they cannot demand any portion of the income from the trustees or even ask them for an accounting. Under these provisions neither Mrs. McCullar nor Mr. Franzheim will ever be entitled to the use of the principal, either presently or for any time prior to its distribution. (The emphasis is supplied.)

Finally, there is clearly no merit to the contention urged in the application for a writ filed by Dr. Benjamin F. Kitchen, Jr., on behalf of his minor son Benjamin that the conclusion we have reached on the merits has the effect of abridging his son's constitutionally guaranteed rights of equal protection under the Fourteenth Amendment to the Constitution of the United States, and the privileges and immunities guaranteed in Section 2 of Article IV thereof. The authorities relied on by counsel do not support this contention.

For the reasons assigned, the judgment of the Court of Appeal for the Fourth Circuit, affirming the judgment of the district court, is affirmed.

HAMITER, J., dissents, he adhering to the conclusion and reasons therefor assigned by him on the original hearing.

HAWTHORNE, J., concurs in the decree.

McCALEB, J., concurs with written reasons.

HAMLIN, J., concurs in part and dissents in part with written reasons.

SANDERS, J., concurs in the overruling of the exception of no right of action and dissents on the merits and assigns written reasons.

McCALEB, Justice (concurring).

Heretofore, I thought the peremptory ·exception of no right of action well founded as plaintiff had not been called to the succession of Mrs. Franzheim by operation of law as provided by Article 940 of the Civil Code. The reason why the ·maxim, le mort saisit le vif, was inapplicable here (so I supposed) was because Mrs. Franzheim's succession vested in her testamentary heirs, Kenneth Franzheim II and Mrs. McCullar (as well as her executors) under Article 940 and the only right plaintiff had, at that time as a forced heir, was to sue for a reduction of the excessive donation as prescribed by Articles 1502 and 1504 of the Code. Article 1502 states that "Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, *is not null*, but only reducible to that quantum". Italics mine.

This Court has had to construe the effect of Codal Articles 1502, 1504 and prescriptive Article 3542 in connection with the apparent conflicts arising from a reading of Articles 940, 941 and 1607

and 1608. And, ever since the decision on rehearing in Cox v. Ahlefeldt, 105 La. 543, 30 So. 175, it has been consistently held that the forced heir, who has not been called to the succession, does not become vested by operation of law with seizin of his legitime. His only remedy is to sue for reduction of the excessive donation since the testamentary heirs are vested with the succession until such time as the forced heir is judicially recognized. See Succession of Smith, 182 La. 389, 162 So. 21, where most of the applicable cases are cited and discussed, and Draper v. Van Leer, 197 La. 259, 1 So.2d 513.

However, I now find that, while it is true that plaintiff was not vested with her mother's succession to the extent of her legitime at the time she filed this suit, she has acquired seizin during the pendency of the litigation and prior to the time the testamentary executors of the Succession of Simms filed the peremptory exception of no right of action in this Court. According to the record, it appears that on December 23, 1964 there was a judgment of probate on a rule to show cause rendered by the Twenty-Fifth Judicial District Court in the ancillary Succession of Mrs. Franzheim. This judgment, inter alia, recognizes Mrs. Reese as a forced heir of the decedent with respect to immovable property in Louisiana and orders that the testamentary dispositions be

reduced to the extent that it impinges on her legitime.

Under this judgment, Mrs. Reese became vested with seizin of the succession by operation of law to the extent of her legitime and the fact that the succession's executors also had seizin is immaterial. For the maxim, le mort saisit le vif, is a rule of our jurisprudence, and the seizin of executors or administrators is a fiction of law which does not prevent that of the heir. Succession of Dupuy, 4 La.Ann. 570; State v. Brown, 32 La.Ann. 1020 and Tulane University v. Board of Assessors, 115 La. 1025, 40 So. 445.

Accordingly, plaintiff is vested with all rights of her mother. See Article 943 of the Civil Code. This, of course, includes her mother's right to assail the dispositions of Mrs. Simms' will which are alleged to be prohibitive substitutions as Mrs. Franzhcim would not be estopped by the acceptance of her mother's succession and the ex parte judgment of possession, from thereafter attacking those dispositions as absolute nullities.

The exception of no right of action is, therefore, properly overruled but the reasons given in the prevailing opinion for its action are not sound in my estimation. Indeed, none of the codal articles (871, 884, 886, 902, 940, 941, 944, 945 and 1607) cited in support of the conclusion

"* * * that Mrs. Reese became seized of all the rights of her mother at the moment of her mother's death, * * *" control the situation at bar because, as I have hereinbefore pointed out, plaintiff was not an heir called by operation of law to her mother's succession. For her mother had in effect (although unenforceably) disinherited plaintiff by disposing of her entire estate, mortis causa, to plaintiff's. brother and sister. As aforesaid, this disposition, according to Article 1502, *is not null* but only reducible by action brought within the time prescribed by law.

On the merits, I am in agreement with the majority view and, hence, concur in the decree.

HAMLIN, Justice (concurring in part and dissenting in part):

I was the organ of this Court in the case of National Surety Corporation v. Standard Accident Insurance Co., 247 La. 905, 175. So.2d 263. Therein I stated:

"In the light of the above jurisprudence and law, statutory and otherwise, we approach a solution of the instant matter,. having in mind the present philosophy that lawsuits should be decided on their merits and should not turn on arbitrary or technical rules of procedure. Page XIII, Report of the Louisiana Law Institute to accompany the Projet of the·

Proposed Louisiana Code of Civil Procedure.⁷" [1]

I voted for a rehearing in this matter because of the foregoing, believing that the same result as reached on original hearing would have been reached had this case been considered on its merits. All parties apparently desire a disposition of this case on the merits.

I will now proceed to discuss the merits.

Article XIX of the will of Mrs. Simms, which is involved in this litigation, is quoted in the majority opinion; therefore, there is no necessity for repetition here.

I find the following elements in Article XIX, which convince me that it has created a valid Trust:

1. There is a bequest "in Trust" to the named Trustees to be held and administered by them with broad discretionary powers.

2. The properties bequeathed to them as such Trustees shall be held by them *for the legatees*, the great-grandchildren of Mrs. Simms. The Louisiana property vested immediately in the great-grandchildren on the death

of Mrs. Simms, subject, of course, to the Trust.

3. The duration of the Trust is during the natural life of Mrs. McCullar (A) and Mr. Franzheim II (B) if they survive Mrs. Simms.

4. Sub-division (C) creates a Trust by a bequest in Trust to the Trustees for the benefit of the minor great-grandchildren of Mrs. Simms, *her legatees.*

Mrs. Reese is not even mentioned in Article XIX. She is a stranger to the will and to the Succession of Mrs. Simms.

Mrs. Franzheim herself provided nothing extra for Mrs. Reese, her daughter; Mrs. Reese received only her legitime as a forced heir of her mother.

Mrs. Simms intended to provide for her great-grandchildren as legatees. She used the word "bequeathed" in the last sentence of Article XIX.

Mrs. Simms' will is dated January 3, 1957; she died May 1, 1957. On July 21, 1958, by ex parte judgment, Mrs. Franzheim, Mrs. Simms' daughter, and the Trustees were placed in possession of the property. Mrs.

1. "7 The Report further states: ' * * *
 " 'The procedural philosophy of the proposed new code is reflected in a number of its articles. While differently phrased, all of these provisions are based on the simple premise that lawsuits should be decided on their merits, and should not turn on arbitrary or technical rules of procedure. Perhaps this procedural philosophy is summarized by Article 5051 of the proposed new code, recommended for adoption as a perpetual reminder to the courts:
 " 'The articles of this Code are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.' "

Franzheim was cognizant of her mother's intent to provide for her great-grandchildren as legatees and abided by it. Mrs. Franzheim died December 15, 1959; her will was ordered probated in Louisiana on January 20, 1965, after litigation in Texas.

The laws and Constitutional mandate in effect at the time of the deaths of Mrs. Simms and Mrs. Franzheim were these:

Louisiana Constitution of 1921, Art. IV, Sec. 16 (As amended by Acts of 1952, No. 208), provided:

" * * * No law shall be passed authorizing the creation of substitutions, fidei commissas or trusts estates; except that the legislature may authorize the creation of trust estates for a period not exceeding ten years from the settlor's death as to a beneficiary which is not a natural person; Ten years from the settlor's death as to a beneficiary who is a natural person *or until the death of the beneficiary whichever is the longer period*; and provided further that this prohibition as to trust estates or fidei commissas shall not apply to donations strictly for educational, charitable, religious purposes or trusts created by employers for the benefit of their employees. * * * " (Emphasis mine.)

Act 209 of 1952, Section 2, provided:

"Section 1811 of Title 9 of the Louisiana Revised Statutes of 1950 is hereby amended and re-enacted to read as follows:

"1811: General Rule

"A trust shall be created when a person (as that term is defined in R.S. 1792(8)) in compliance with the provisions of this Chapter transfers the legal title to property to a trustee in trust for the benefit of himself or a third person."

Act 81 of 1938 (Trust Estates Law of 1938), Title 2, Chapter 1, Section 5, provided:

"A trust shall be created when a person in compliance with the provisions of this Act transfers the legal title to property to a trustee in trust for the benefit of himself or a third person." (This Section became Title 9:1811 of the Louisiana Revised Statutes.)

It is my opinion, after protracted study of the law and Constitutional provision in effect at the time of the deaths of Mrs. Simms and Mrs. Franzheim in their relation to Mrs. Simms' will, that the will of Mrs. Simms does not contain a prohibited substitution.

The Louisiana State Law Institute in a report of May 1, 1964, to the Governor and Members of the Legislature, to accompany the Proposed Louisiana Trust Code (which permits prohibited substitutions), correctly stated that the constituent characteristics of a prohibited substitution are as follows:

"1. A double liberality, or a double disposition in full ownership, of the

same thing to persons called to receive it, one after the other;

"2. A charge to preserve and transmit, imposed on the first beneficiary for the benefit of the second beneficiary;

"3. Establishment of a successive order that causes the substituted property to leave the inheritance of the burdened beneficiary and enter into the patrimony of the substituted beneficiary."

The Trust under Article XIX of Mrs. Simms' will contains no double liberality. The Trustees are to hold the testator's property in trust for the great-grandchildren. There is no double disposition in full ownership; full ownership is bequeathed to the great-grandchildren not after another legatee owns the property but after it is held by the Trustees for an enumerated period.

Mrs. Simms in her will spoke of Mrs. McCullar and Mr. Franzheim II as beneficiaries, but no charge is imposed on them. They have no duties and can demand nothing under the will. Anything that they might receive is at the pleasure of the Trustees. They cannot, under any stretch of the imagination, be classed as true income beneficiaries. In truth and in fact, they are beneficiaries under inter vivos Trusts which are mentioned in Mrs. Simms' will. These Trusts, except insofar as the Trustees are designated, are not a part of Mrs. Simms' wil'

The fact that Mrs. Simms stated that the instant properties would be held by the Trustees during the lives of Mrs. McCullar and Mr. Franzheim II (she could have stated a definite period of time) did not establish a successive order. According to the will, no property ever entered or left Mrs. McCullar's and Mr. Franzheim II's inheritances and thereafter entered the patrimony of the great-grandchildren.

The further fact that Mrs. Simms stated in her will that if any of her great-grandchildren were not twenty-one years of age at the time they were to be vested with her property such property would pass and become the properties of the Trustees mentioned in other inter vivos trusts does not destroy nor do away with the ownership of the great-grandchildren. There are no substituted beneficiaries.

Mrs. Simms' intention to vest her great-grandchildren with the ownership of the described properties is express and clear. The reference to Trustees enumerated in inter vivos trusts (some reference having to be made to such trusts) does not make the manifestation of Mrs. Simms' wish, intention and desire less clear in her will.

I, therefore, believe that the instant Trust is valid and should have been so considered on the merits.

I respectfully concur in that part of the majority opinion which overrules the exception of no right of action, as well as the other exceptions filed in limine. I concur only for the reasons herein set forth.

I respectfully dissent from that part of the majority opinion which invalidates the Trust created in Article XIX of Mrs. Simms' will.

SANDERS, Justice (dissenting).

Before us is the last will of Mrs. Lillie Weir Simms, who died in Houston, Texas, on May 1, 1957. Condensed to its essentials, the will leaves the testator's residuary estate "in trust to [named trustees] * * * to be held and administered by them. * * * for and during the natural life of my said grand-daughter [who is designated as income beneficiary] * * * and after her death * * * said properties shall pass to my great-grandchildren [named in the will]. * * *"

The question presented is whether this disposition is a prohibited substitution[1] or a valid trust[2] under Louisiana law.

Holding that the disposition is a prohibited substitution, the majority has struck down the will. I disagree.

Under a well-established rule, the court must construe the will so as to maintain its validity, if it can reasonably do so. Thus,

---

if the will is equally susceptible of two interpretations, the court is constrained to adopt the one that saves the life of the will. LSA–C.C. Arts. 1712, 1713; Girven v. Miller, 219 La. 252, 52 So.2d 843; Succession of Feitel, 176 La. 543, 146 So. 145; Swart v. Lane, 160 La. 217, 106 So. 833; Lelong v. Succession of Lelong, La.App., 164 So.2d 671.

To constitute a prohibited substitution, the testator must have made a *double* disposition of the same property in *full ownership* to successive legatees. LSA–C.C. Art. 1520; Succession of Thilborger, 234 La. 810, 101 So.2d 678; Succession of Fertel, 208 La. 614, 23 So.2d 234; Tucker, Substitutions, 24 Louisiana Law Review 439, 490–491.

Perfect ownership gives the right to use, to enjoy, and to dispose of property in the most unlimited manner. LSA–C.C. Art. 491; Giroir v. Dumesnil, 248 La. 1037, 184 So.2d 1. As we said in Giroir v. Dumesnil:

"Perfect ownership gives the right to use, to enjoy, and to dispose of property to the exclusion of others. * * * Such ownership consists of three elements united in the same person: *usus*, or the right to use; *fructus*, or the right to the fruits; and *abusus*, or the right to dispose of."

Under the will, the trustees receive the property "in trust" to be "held and ad-

---

1. Art. IV, Sect. 16, Louisiana Constitution; Art. 1520, Louisiana Civil Code.

2. Act 81 of 1938, known as the Trust Estates Law of 1938 (formerly R.S. 9:1791–2212) applies to this will.

ministered by them." The granddaughter is income beneficiary, that is, she receives the income. The great-grandchildren are principal beneficiaries, that is, the property is to be distributed to them after the death of the income beneficiary. The will was so construed by the court in the Louisiana probate proceedings in the Succession of Lillie Weir Simms, by the judgment of possession rendered July 21, 1958.

When the will is thus properly construed, the tenure of the trustees is not one of full ownership within the definition of prohibited substitution. Moreover, such a trust has full sanction in the Trust Estates Law of 1938.

For the reasons assigned, I respectfully dissent.

On Application for Second Rehearing.

HAWTHORNE, Judge, Concurring in the refusal to grant a second rehearing.

I concurred in the decree in this case on first rehearing because I could not distinguish the case of Succession of Guillory, 232 La. 213, 94 So.2d 38, from this one, and I considered that, under the holding of this court in that case, the trust provisions of the will in the instant case contained prohibited substitutions which are nullities in contravention of the public policy of this state and that the dispositions must fall in their entirety under Article 1520 of the Civil Code. The contention is made on application for a second rehearing, however, that our holding in Guillory is inconsistent with the public policy of this state in regard to trust estates as expressed in our Constitution, Section 16, Article 4, as amended by Act 208 of 1952, and the 1938 Trust Estates Law, Act 81 of 1938, former R.S. 9:1791 et seq., and is therefore unsound and ought to be overruled. I agree with this contention, and I am willing to grant a second rehearing for the purpose of overruling Guillory because I consider it unsound and do not regard the trust provisions of the instant will as containing prohibited substitutions. It would be a vain and useless thing to grant a second rehearing, however, since I cannot get a majority of the court to agree with me that the Guillory case should be overruled, and because as long as the Guillory case stands, the trust provisions of this will contain prohibited substitutions. Under these circumstances I have voted to deny a second rehearing because I do not consider that the trust provisions can be upheld except by overruling Guillory, and I am unwilling to prolong this litigation when it is obvious that only the same result can be reached by another hearing of the case.

HAMITER, J., dissents—being of the opinion that the exception of no right of action is good.

SANDERS, J., is of the opinion that a rehearing should be granted.